## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-CA-00663-SCT

*IN THE MATTER OF THE ESTATE OF MARY L. REID, DECEASED: MICHAEL B. CUPIT*

*v.*

*THOMAS J. PLUSKAT*

### ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 04/10/2000 |
| TRIAL JUDGE: | HON. W. HOLLIS McGEHEE, II |
| COURT FROM WHICH APPEALED: | AMITE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JAMES LAWTON ROBERTSON |
| | PAUL E. BARNES |
| ATTORNEYS FOR APPELLEE: | MICHAEL MADISON TAYLOR |
| | JAMES D. SHANNON |
| | KELLEY MITCHELL BERRY |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS AND ESTATES |
| DISPOSITION: | AFFIRMED - 5/30/2002 |
| MOTION FOR REHEARING FILED: | 01/11/2002 |
| MANDATE ISSUED: | 7/23/2002 |

**EN BANC.**

**DIAZ, JUSTICE, FOR THE COURT:**

¶1. The motion for rehearing is denied. The original opinion is withdrawn, and this opinion is substituted therefor.

¶2. Thomas J. Pluskat filed a Petition for Letters of Administration and Other Relief in the Amite County Chancery Court seeking to set aside the attested will of Mary Lea Reid, the adoption of Michael B. Cupit by Reid, and the warranty deed executed by Reid conveying her home and land to Cupit. The chancellor set aside the will, adoption, and deed finding that they were all products of Cupit's fraud and undue influence on Reid. Cupit subsequently filed a timely appeal alleging that the chancellor erred in setting aside the deed, will and adoption and raises the following issues for consideration by this Court:

> **I. WHETHER THOMAS PLUSKAT WAS BARRED FROM ATTACKING THE WARRANTY DEED BY THE STATUTE OF LIMITATIONS AND WHETHER THE LOWER COURT ERRED IN HOLDING THAT THE DEED IS VOID.**

> **II. WHETHER THOMAS PLUSKAT HAD STANDING TO ATTACK THE ADOPTION, WAS BARRED FROM ATTACKING THE ADOPTION BY THE APPLICABLE**

**STATUTE OF LIMITATIONS AND WHETHER THE LOWER COURT ERRED IN HOLDING THAT CUPIT COMMITTED A FRAUD ON THE ADOPTION COURT.**

**III. WHETHER THE LOWER COURT ERRED IN FINDING THAT THE ATTESTED WILL OF MARY LEA REID IS VOID DUE TO THE UNDUE INFLUENCE OF MICHAEL CUPIT.**

## FACTS

¶3. During the summer of 1979, Michael B. Cupit, a twenty-four year old man, made an uninvited appearance at the home of Mary Lea Reid, a seventy-eight year old widow. Reid's home is located in Liberty, Mississippi and, at that time, Cupit lived in Brookhaven, Mississippi. Cupit claims that his motivation for the visit was his interest in antebellum homes and the fact that some of his relatives had sharecropped on Reid's farm in the 1920's and 1930's. Although Cupit began law school at the University of Mississippi that fall, he continued to visit Reid and developed a strong relationship with her.

¶4. Cupit represents the nature of his relationship with Reid as that of mother and son. However, the chancellor found that the relationship "went beyond a mother/son relationship." The chancellor based this finding, in part, on the testimony of Lorene Reid, a friend and relative of Ms. Reid. Lorene Reid testified that she was very embarrassed by Cupit's and Ms. Reid's relationship, especially their physical affection toward one another. The chancellor also considered letters that Reid wrote to Cupit in 1982 finding that they indicate "an intimate relationship of some nature between Michael Cupit and Mary Reid."

¶5. In March of 1982, Cupit took Reid to see Judge Mike Carr, a chancellor in Lincoln County. This trip was instigated by Cupit. Upon Judge Carr's recommendation that Cupit and Reid see a lawyer, Cupit took Reid to the law firm of Allen, Allen & Boutwell in Brookhaven, Mississippi. There they met with Raymond Boutwell. Cupit told Boutwell that he wanted to be adopted to cut off any potential heirs of Reid. Cupit also later met with Boutwell without Reid. Boutwell convinced Cupit that it would not be necessary to go forward with the adoption. Cupit then asked Boutwell to prepare a deed conveying Reid's property to Cupit.

¶6. The day after the deed was filed, Cupit helped Reid compose a holographic will devising all of her property to him. The chancellor found that Cupit was Boutwell's client and that the contact between Cupit and Boutwell was more substantial than between Boutwell and Reid. In addition, Cupit testified that he had discussions with his fellow law students about how he could obtain Reid's property.

¶7. In August of 1983, Reid once again visited Allen, Allen & Boutwell. On that occasion, she was represented by Emmett Allen. She was accompanied by Cupit, but he did not participate in the discussion between Allen and Reid. Allen prepared a will for Reid and took every precaution to ensure that she was competent and no overreaching was involved. However, the chancellor found that there was undue influence and overreaching arising from "antecedent circumstances" of which Reid's attorney's could not be aware. For example, the attested will is essentially a duplicate of the holographic will Cupit helped Reid write. Due to the fact that the firm of Allen, Allen & Boutwell represented both Reid and Cupit, the chancellor found that Reid did not receive independent counsel. Also, the chancellor found that during this time Cupit was acting as Reid's attorney on other matters. Cupit wrote at least two letters in his capacity as an attorney on behalf of Reid. One letter was a reply to a man interested in buying the property and another letter was sent to a long time neighbor of Reid's warning him to stay off of the property. Cupit also

transferred Reid's power of attorney to himself in 1995.

¶8. In 1986, Reid adopted Cupit. Gary Honea, an attorney in Magnolia, Mississippi, handled this matter.

¶9. The chancellor found that Cupit alienated Reid's family and friends by his territorial behavior. Although witnesses testified that Reid was proud to have Cupit as her adopted son and heir, the chancellor found that this testimony must be seen in the proper context. Those witnesses did not have the benefit of knowing the whole story. The chancellor eloquently stated his reasoning supporting his holding as follows:

> The Court finds that the evidence regarding Michael Cupit's efforts to exclude most, if not all of the family members and some long-time friends of Mary Reid from her, together with Mary Reid's strong desire to have a child which she had never had, coupled with the engaging and unique personality and tendencies of Michael Cupit, as observed by the court in the evidence as well as personal observations of Mr. Cupit throughout the course of the trial, combined so as to put Mr. Cupit in a position with Mary Reid that Mr. Cupit could and did over-reach and influence Mary Reid to his advantage and her ultimate disadvantage. Mr. Cupit's influence, subtle and undetected by some of Mary Reid's friends, was used in order to gain advantage of Mary Reid and to obtain her property consisting of approximately 205 acres of land, an antebellum home that had been in her family for about 140 or so years and substantial and unique family heirlooms located within the home as well as significant amounts of money from the time of Mr. Cupit's law school days through the time of Mary Reid's death. During a portion of this time, subsequent to Mr. Cupit's beginning of the practice of law, he occupied a dual fiduciary role in that he was her attorney and counselor at law.

> \* \* \*

> The Court finds as a matter of fact and law that the deed, will, adoption, and subsequent power of attorney granted by Mary Reid and /or pursued by Mary Reid and Michael Cupit were the direct result of Mr. Cupit's efforts to obtain the property of Mary Reid to his own advantage and to her ultimate harm and disadvantage. Therefore, the Court finds that the deed and will were procured as a result of undue influence, overreaching, breach of a fiduciary relationship, breach of an attorney-client relationship, breach of a position of trust that Michael Cupit had gained with and over Mary Reid notwithstanding the fact that she was "strong-willed."

## DISCUSSION

¶10. When reviewing a chancellor's ruling, this Court will not reverse that decision unless it is "manifestly wrong or clearly erroneous." *In re Estate of Mason v. Fort*, 616 So.2d 322, 331 (Miss. 1993); *see also In re Estate of McClerkin*, 651 So.2d 1052 (Miss. 1995).

### I. WHETHER THOMAS PLUSKAT WAS BARRED FROM ATTACKING THE WARRANTY DEED BY THE STATUTE OF LIMITATIONS AND WHETHER THE LOWER COURT ERRED IN HOLDING THAT THE DEED IS VOID.

¶11. Cupit argues that Pluskat is barred from attacking the validity of the warranty deed which Reid executed, conveying her land and home to Cupit, but reserving a life estate for herself.

¶12. The chancellor found the existence of a confidential relationship between Cupit and Reid due to their close relationship, Cupit's dominance over Reid, Reid's advanced age and because Cupit had power of

attorney over Reid.

¶13. Where a confidential relationship exists, there is a presumption of undue influence concerning an inter vivos gift. Such gifts are presumed invalid. *Madden v. Rhodes*, 626 So.2d 608, 619 (Miss. 1993). A confidential relationship arises "whenever there is a relationship between two people in which one person is in a position to exercise dominant influence upon the other because of the latter's dependency on the former arising either from weakness of mind or body, or through trust, the law does not hesitate to characterize such a relationship as fiduciary in character." *Hendricks v. James*, 421 So.2d 1031, 1041 (Miss. 1982). Factors to be considered in determining if and when a confidential relationship exists, include: (1) whether one person has to be taken care of by others, (2) whether one person maintains a close relationship with another, (3) whether one person is provided transportation and has their medical care provided for by another, (4) whether one person maintains joint accounts with another, (5) whether one is physically or mentally weak, (6) whether one is of advanced age or poor health, and (7) whether there exists a power of attorney between the one and another. *In re Estate of Grantham*, 609 So.2d 1220, 1224 (Miss.1992); *Costello v. Hall*, 506 So.2d 293 (Miss.1987); *Hendricks v. James*, 421 So.2d 1031 (Miss.1982).

¶14. Once a confidential relationship is found the burden shifts to the beneficiary to disprove the presumption of undue influence by clear and convincing evidence. *In re Estate of Dabney*, 740 So.2d 915, 921 (Miss. 1999); *Griffin v. Armana*, 687 So.2d 1188, 1192 (Miss. 1996). To overcome the presumption of undue influence, the proponents must show (a) good faith on the part of the beneficiary, (b) the grantor's full knowledge and deliberation of the consequences of her actions, and (c) the grantor's independent consent and action. *Mullins v. Ratliff*, 515 So.2d 1183, 1193 (Miss. 1987).

¶15. When determining the issue of good faith, this Court considers who initiated the gift, where the gift was executed and in whose presence, consideration for the gift and who provided the consideration, and the secrecy or openness of the gift. *Id*. at 1195. Here, Cupit initiated the preparation of the deed. Cupit even drove Reid to the attorney's office and participated in the discussions of the preparation of the deed with the attorney on his own. Furthermore, Cupit gave Reid a $10 as consideration for this gift. We find that the chancellor's holding that Cupit did not act in good faith is based on substantial evidence.

¶16. Because undue influence has been established, we must now turn to the issue of the statute of limitations. Miss. Code Ann. ' 15-1-9 (1995) provides a ten-year statute of limitations on actions to recover land. However, where there has been concealed fraud in the conveyance, the cause of action accrues when the fraud could have been discovered with reasonable diligence. Miss. Code Ann. § 15-1-7 states in pertinent part that,

> [a] person may not make an entry or commence an action to recover land except within ten years next after the time at which the right to make the entry or to bring the action shall have first accrued to some person through whom he claims, or, if the right shall not have accrued to any person through whom he claims, then except within ten years next after the time at which the right to make the entry or bring the action shall have first accrued to the person making or bringing the same....

Miss. Code Ann. § 15-1-7 (1995).

¶17. This Court has held that statutes of limitation in actions to recover land begin to run as soon as a cause of action exists. *Aultman v. Kelly,* 236 Miss. 1, 5, 109 So.2d 344, 346 (1959). However, § 15-1-7 has been construed to require possession by the defendants claiming its protection. *Greenlee v. Mitchell,* 607

So.2d 97,110 (Miss. 1992); **Bowen v. Bianchi,** 359 So.2d 758, 760 (Miss.1978); **Trigg v. Trigg,** 233 Miss. 84, 99, 101 So.2d 507, 514 (1958).

¶18. In **Greenlee** this Court held that the ten-year statute of limitations on action to recover land did not commence to run as soon as a cause of action existed, upon execution of deed pursuant to undue influence, but only when plaintiffs, the grantor's heirs, had notice of the existence of an attempted deed, where the defendants had not taken possession in the interim. 607 So.2d at 110.

¶19. Here Cupit did not gain possession with the recording of the 1982 deed. Reid retained a life estate and remained in possession until her death. The only person who could have contested the deed during this period was Reid herself, who was in possession. Therefore, the statute of limitations did not begin to run against Thomas Pluskat until 1997 when Reid died.

¶20. As this suit was commenced well within ten years after Reid died and the defendant was not in possession during her lifetime, Cupit's claim that the statute had run is without merit.

### II. WHETHER THOMAS PLUSKAT HAD STANDING TO ATTACK THE ADOPTION, WAS BARRED FROM ATTACKING THE ADOPTION BY THE APPLICABLE STATUTE OF LIMITATIONS AND WHETHER THE LOWER COURT ERRED IN HOLDING THAT CUPIT COMMITTED A FRAUD ON THE ADOPTION COURT.

¶21. Cupit argues that Pluskat does not have standing to challenge the validity of the adoption and that Pluskat is barred by the statute of limitations pertaining to adoptions. In both of these assertions, Cupit is correct. But, once again, this case is highly unusual.

¶22. Based upon Miss. Code Ann. ' 93-17-7 (1994), only a natural parent has a statutory right to object to the adoption of a child. **In re J.J.G.**, 736 So.2d 1037, 1040 (Miss. 1999). Also, there is a six-month statute of limitations for challenging final adoptions. Miss. Code Ann. ' 93-17-15 (1994). We recognize that the adoption of children is sacred, and the finality of adoptions is of the utmost necessity. However, we are not dealing with the adoption of a child in this case. We are dealing with an adult man, with a law degree, who gained the trust and dependence of an elderly lady. Other states have recognized this problem and found that the heirs of a deceased person who adopted an adult do have standing to attack the adoption. **In re Sewall**, 51 Cal. Rptr. 367, 378 (Cal. Ct. App.1966); **Greene v. Fitzpatrick**, 295 S.W. 896 (Ky. 1927); **Raymond v. Cooke**, 115 N.E. 423 (Mass. 1917). In accord with these cases, we find that Pluskat does have standing to attack the adoption of Michael Cupit.

¶23. Furthermore, courts have the inherent power to vacate a judgment at a subsequent term of court when the judgment is void because of fraud in its acquisition. **Whiteway Fin. Co. v. Parker**, 226 So.2d 903, 904 (Miss. 1969).

¶24. The chancellor found that the adoption was also the product of a "long term plan and scheme" concocted and obtained by Cupit by fraud and overreaching. The adoption court was not informed of the existence of the deed, the will, the previous attempted adoption, or the fact that Cupit acted as Reid's attorney. Therefore, the chancellor found that Cupit had committed a fraud on the adoption court. We affirm the chancellor's ruling on this issue. Let it be clear that our findings concerning the adoption in this case are specific to the facts of this case.

### III. WHETHER THE LOWER COURT ERRED IN FINDING THAT THE ATTESTED WILL OF MARY LEA REID IS VOID DUE TO THE UNDUE INFLUENCE OF MICHAEL CUPIT.

¶25. Cupit argues that the chancellor erred in finding that Reid's will is void because Reid was competent to make a will and there was no confidential relationship between the two of them.

¶26. As previously discussed, the chancellor found that a confidential relationship and an attorney/client or fiduciary relationship existed between Reid and Cupit. This finding is based on substantial evidence.

¶27. Once a confidential relationship is found, the beneficiary must disprove the presumption of undue influence by clear and convincing evidence. *In re Estate of Dabney*, 740 So.2d at 921; *In re Estate of Smith*, 543 So.2d 1155, 1161 (Miss. 1989).

¶28. To overcome the presumption of undue influence, the proponents must show (a) good faith on the part of the beneficiary, (b) the grantor's full knowledge and deliberation of the consequences of her actions, and (c) the grantor's independent consent and action. *Mullins,* 515 So.2d at 1193.

¶29. For many of the same reasons he found that the deed was a product of undue influence, the chancellor also found that Reid's will was a product of undue influence. The attested will was an almost exact copy of the holographic will which Cupit helped Reid prepare. As discussed previously, the chancellor found that Cupit did not act in good faith in any part of his dealings with Reid. The chancellor also found that Reid did not receive independent counsel in the making of her will. We find that the attorney who prepared the will acted as a mere scrivener and that Reid did not receive independent counsel concerning her will. *In re Estate of Moses*, 227 So. 2d 829, 833 (Miss. 1969). We affirm the chancellor's decision to set aside the will.

### CONCLUSION

¶30. The chancellor's decision to set aside the deed, adoption and will is affirmed. The peculiar and troubling circumstances of this case require that the deed be set aside and that the statute of limitations concerning the deed be overlooked. For the same reasons, the statute of limitations pertaining to adoptions does not bar Pluskat's attack on this adult adoption.

¶31**. AFFIRMED.**

**PITTMAN, C.J., SMITH, P.J., COBB, CARLSON AND GRAVES, JJ., CONCUR. McRAE, P.J., CONCURS IN RESULT ONLY. WALLER AND EASLEY, JJ., NOT PARTICIPATING.**