# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-CA-01300-SCT

*IN RE THE MATTER OF THE ESTATE OF*
*EFFIE MAE AUTRY, DECEASED: STEVE AUTRY*

*v.*

*MARCUS AUTRY, STEPHANIE COOPER,*
*MICHEAL AUTRY, MARIS AUTRY, AND DORIS*
*VANZANT*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/03/2023 |
| TRIAL JUDGE: | HON. BRADLEY D. TENNISON |
| TRIAL COURT ATTORNEYS: | JOE M. DAVIS |
| | JESSIE WAYNE DOSS, JR. |
| | PAUL MASON WAGES |
| COURT FROM WHICH APPEALED: | PONTOTOC COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | LAURA ELIZABETH SMITTICK |
| ATTORNEYS FOR APPELLEES: | JOE M. DAVIS |
| | JESSIE WAYNE DOSS, JR. |
| | SARAH CATHERINE CROUCH |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | AFFIRMED AND REMANDED - 04/03/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE COLEMAN, P.J., ISHEE AND BRANNING, JJ.**

**BRANNING, JUSTICE, FOR THE COURT:**

¶1.     Steve Autry appeals the order of the Pontotoc County Chancery Court invalidating

several warranty deeds and the 2019 Last Will and Testament of his mother, Effie Mae

Autry, due, *inter alia*, to undue influence and failure to properly authenticate the will.  After

review, we affirm.

## FACTS AND PROCEDURAL HISTORY

### a.     The 2014 Will

¶2.     Eugene and Effie Mae Autry had three children, Steve Autry, Michael Autry, and Melvin Autry. Michael and Melvin both predeceased their mother. Michael was survived by three children: Michael D. Autry, Doris Autry Vanzant, and Maris Autry. Melvin was survived by two children: Marcus Autry and Stephanie Autry Cooper. On December 8, 2014, Eugene and Effie executed identical wills, leaving all assets to the surviving spouse on the death of the remaining spouse and approximately equal distribution among the living children and grandchildren, along with a bequest to Effie's church. Long-time family attorney, Sidra Winter, drafted these wills after multiple meetings with the couple regarding their assets and their testamentary intentions for the same.

¶3.     Eugene passed away in 2017, and the passing of all assets to Effie under his 2014 Will was uncontested. Because Effie survived Eugene, her 2014 Will provided for her one hundred and forty-three acres of real property to be distributed as follows: Steve would receive one-third, the children of Michael Autry (Maris, Michael D., and Doris) were to receive one-third, and the children of Melvin Autry (Marcus and Stephanie) would receive one-third. Additionally, her 2014 Will provided for a bequest of $1,000 to her church and specific bequests of certain rental houses and articles of personal property to Steve and each of her grandchildren (Maris, Michael D., Doris, Marcus, and Stephanie).

2

### b. The 2019 Will

¶4. In 2019, Effie executed various warranty deeds and a new will leaving all assets to her only living son, Steve. When compared to the 2014 Will, Effie's 2019 Will completely disinherited all grandchildren, unless Steve predeceased her, in which case the will specifically disinherited Marcus and Stephanie. The 2019 Will also unexplainably left out Effie's bequest of $1000 to her church.

¶5. The circumstances surrounding the execution of the warranty deeds and the 2019 Will are as follows: sometime in 2019, Steve called Winter to discuss drafting a new will and various warranty deeds for Effie. Winter met with Effie and Steve and because she felt like there had been a significant decline in Effie's mental capacity and because she was concerned about undue influence by Steve. Winter ultimately refused to prepare a new will or warranty deeds as requested. In fact, she even called other local attorneys to warn them of the situation—something that she had never before done.

¶6. In November of 2019, Steve hired attorney Anna Kate Robbins[1] to handle the new will and warranty deeds. Robbins testified that she did not know Effie prior to this engagement but also stated that she felt that Effie knew what she wanted and that she was competent to execute legal documents. Robbins was not aware that Winter had declined to perform this work. At trial, the testimony was clear that Effie was suffering from increasingly severe dementia and required around-the-clock care, which was provided in part by Karen Souter.

---

[1] Robbins was not one of the attorneys contacted by Winter following this meeting.

3

¶7. Steve drove Effie to Robbins's office for the first of two meetings about the 2019 Will. Robbins testified that she discussed the contents of the new will with Effie outside of the presence of others and that Effie desired to disinherit family members due to the filing of the conservatorship action in 2019 by grandson Marcus.[2] A few days after the initial meeting, Steve drove Effie, Karen, and Karen's sister Bonnette Souter back to Robbins's office to execute the will. Effie ultimately signed the 2019 Will, and Bonnette and Robbins's secretary, Elizabeth Russom, signed as witnesses but failed to included their addresses on the affidavit. The 2019 Will listed Steve as Effie's sole beneficiary, with Karen and Steve's wife, Cheviere Autry, listed as co-executors. In the weeks that followed, Effie executed eight warranty deeds creating a life estate for herself in her real property with a remainder interest to Steve. Effie passed away on December 12, 2021.

¶8. Following Effie's death, her grandson, Marcus Autry, filed a Petition for Probate of the 2014 Will. Steve Autry filed his Answer to Marcus's Petition along with a Counter-Petition to Probate the 2019 Will. The Court issued a Decree granting Steve's Counter-Petition to Probate the 2019 Will.

---

[2] Marcus testified at trial that sometime in January of 2019, someone from Renasant Bank notified him of a fraud alert on Effie's accounts. The bank further notified Marcus that Steve, Steve's wife, Cheviere Autry, or both had come into the bank with Effie and attempted to either remove Marcus's name from all of Effie's accounts or close Effie's accounts. Marcus further testified that, at this time, Steve had not yet obtained a power of attorney over Effie. Marcus testified that he contacted a person named "Jackson," who told Marcus to file a petition for a conservatorship on behalf of Effie. Marcus filed a petition for conservatorship in February 2019, which upset and confused Effie. Marcus ultimately withdrew his petition later that same month.

4

¶9. Marcus and the other grandchildren, however, filed a Motion to Strike the Decree. No order appears in the record granting or denying this motion. On August 29, 2023, the trial court heard arguments regarding the validity of the 2014 and 2019 Wills. Steve now appeals the final judgment of the chancellor, which: (1) found the 2019 Will to be invalid based on failure to authenticate, lack of testamentary capacity, and undue influence by Steve; (2) set aside the Decree admitting the 2019 Will to probate; and (3) set aside the eight warranty deeds on the basis of lack of testamentary capacity and undue influence by Steve.

## STANDARD OF REVIEW

¶10. Mississippi appellate courts employ an abuse-of-discretion standard of review when analyzing a will-contest case. *Christmas v. Christmas (In re Will of Beard)*, 334 So. 3d 1154, 1156 (Miss. 2022) (quoting *Christmas v. Christmas (In re Will of Beard)*, 364 So. 3d 755, 759 (Miss. Ct. App. 2021), *rev'd*, *Christmas*, 334 So. 3d at 1160). We "will not disturb a chancellor's findings of fact in a will contest unless the findings are clearly erroneous or manifestly wrong, or the chancellor applied an incorrect legal standard." *Id.* (internal quotation mark omitted) (quoting *Christmas*, 334 So. 3d at 1156). When reviewing a chancellor's legal findings, however, the Court employs a *de novo* standard of review. *Griffith v. Griffith (In re Est. of Griffith)*, 30 So. 3d 1190, 1193 (Miss. 2010) (citing *Adams v. Carney (In re Will of Carney)*, 758 So. 2d 1017, 1020 (Miss. 2000)).

## DISCUSSION

I. **Due Execution of the 2019 Will**

¶11. Mississippi Code Section 91-7-7 states:

The due execution of the will, whether heretofore or hereafter executed, must be proved by at least one (1) of the subscribing witnesses, if alive and competent to testify. If none of the subscribing witnesses can be produced to prove the execution of the will, it may be established by proving the handwriting of a testator and of the subscribing witnesses to the will, or of some of them. The execution of the will may be proved by affidavits of subscribing witnesses. The affidavits may be annexed to the will or may be a part of the will, and *shall* state the address of each subscribing witness. Such affidavits may be signed at the time that the will is executed.

Miss. Code Ann. § 91-7-7 (Rev. 2021) (emphasis added). In its order, the chancery court found that the 2019 Will was not duly authenticated, since the affidavits of the two attesting witnesses did not contain the witnesses' addresses as specifically required by statute. Steve, however, argues that this Court should apply the doctrine of substantial compliance to overcome the "formality" prescribed under Section 91-7-7 and further cites ***Better v. Hirsch***, 115 Miss. 614, 76 So. 555 (Miss. 1917), and ***Lyle v. Shannon (In re Est. of Giles)***, 228 So. 2d 594 (Miss. 1969), to support his argument. But the application of both cases is wholly misplaced because both cases involve statutory formalities of which this Court found no express mandate in Mississippi law. ***Better***, 76 So. at 555-56 (finding that section 5078 of the Mississippi Code of 1906 did "not state where the signature of a testator to a will shall be located"); ***In re Est. of Giles***, 228 So. 2d at 596-97 (finding "no legal requirement [in Section 657 of the 1942 Mississippi Code Annotated (1956)] that the signature 'subscribing' a holographic will must be placed on the same sheet of paper as the dispositive provisions of the will, so long as the as the signature is at the conclusion of the will").

¶12. In the present case, the statute clearly states that due execution of a will may be proved by the affidavits of subscribing witnesses when no subscribing witnesses testify at trial and that the affidavits shall contain the addresses of the witnesses. § 91-7-7. We cannot

ignore the address requirement mandated by the Legislature. *See **In re Int. of D.D.B. v. Jackson Cnty. Youth Ct.***, 816 So. 2d 380, 382 (Miss. 2002) ("When used in a statute, the word 'shall' is mandatory and the word 'may' is discretionary." (citing ***Murphy v. State***, 253 Miss. 644, 178 So. 2d 692, 693 (1965))). Such mandatory language—"*shall* state the address," § 97-7-7 (emphasis added)—"leaves no room for judicial discretion" when due execution is not proved otherwise. ***Bay Point Props., Inc. v. Miss. Transp. Comm'n***, 201 So. 3d 1046, 1058 (Miss. 2016). We, therefore, conclude that the chancellor correctly found that the 2019 Will was not duly authenticated and was, thus, invalid. Because this finding is dispositive as to the 2019 Will, we will not address the other issues raised on appeal regarding the 2019 Will.

## II.     Undue Influence and Invalid Warranty Deeds

¶13.    Steve argues that the chancellor erred by finding that the eight warranty deeds executed by Effie were the product of his undue influence that came about as the result of Steve's confidential relationship with his mother. This Court defines a confidential relationship as "a relationship between two people in which one person is in a position to exercise dominant influence upon the other because of the latter's dependency on the former arising either from weakness of mind or body, or through trust[.]" ***Foster v. Williams (In re Est. of Laughter)***, 23 So. 3d 1055, 1063 (Miss. 2009) (alteration in original) (internal quotation marks omitted) (quoting ***Cupit v. Pluskat (In re Est. of Reid)***, 825 So. 2d 1, 5 (Miss. 2002)). Steve does not dispute the fact that a confidential relationship existed between Effie and him, nor does he dispute the presumption of undue influence. He instead argues that he successfully rebutted the presumption of undue influence at trial.

7

¶14. Once a presumption of undue influence is raised, Steve, as the beneficiary, must overcome this presumption by clear and convincing evidence. *In re Est. of Reid*, 825 So. 2d at 7 (citing *Dabney v. Hataway (In re Est. of Dabney)*, 740 So. 2d 915, 921 (Miss. 1999); *Lowrey v. In re Will of Smith*, 543 So. 2d 1155, 1161 (Miss. 1989)). "To overcome the presumption of undue influence, the proponents must show (a) good faith on the part of the beneficiary, (b) the grantor's full knowledge and deliberation of the consequences of her actions, and (c) the grantor's independent consent and action."[3] *In re Est. of Reid*, 825 So. 2d at 5-6 (citing *Mullins*, 515 So. 2d at 1193). But Steve's testimony is insufficient to rebut this presumption. *In re Est. of Holmes* 961 So. 2d at 681. Also, this Court determines "good faith" by weighing the following factors:

> (a) the determination of the identity of the initiating party in seeking preparation of the instrument, (b) the place of the execution of the instrument and in whose presence, (c) what consideration and fee were paid, if any, and (d) by whom paid, and (e) the secrecy or openness given the execution of an instrument.

*Wright v. Roberts*, 797 So. 2d 992, 1000 (Miss. 2001) (internal quotation marks omitted) (quoting *Murray*, 446 So. 2d at 578)).

---

[3] Both Steve and the will contestants state the third prong of this test using the former language from this Court in *Murray v. Laird*, 446 So. 2d 575 (Miss. 1984). In *Murray*, we stated the third prong as "advice of (a) competent, (b) disconnected from the grantee and (c) devoted wholly to the grantor/testator's interest." *Id.* at 578. But we revised this language three years later in *Mullins v. Ratcliff*, 515 So. 2d 1183, 1193 (Miss. 1987), requiring instead the grantor/testator's independent consent and action. Evidence of independent advice, however, may still be offered, but we have held that it is but one way of showing independent consent and action. *Holmes-Pickett v. Holmes-Price (In re Est. of Holmes)*, 961 So. 2d 674, 680 (Miss. 2007).

¶15. Steve argues that he acted in good faith, first stating that he merely drove Effie to Robbins's office and instructed Robbins to prepare the will and warranty deeds. He further argues that neither he nor Cheviere knew what Effie was including in the documents. Steve states that Effie had been adamant about changing her will because she was upset at the legal actions that certain members of her family had taken against her. He argues that this was no secret within his family. He claims that Effie "wanted to exclude certain family members, so much so that Attorney Robbins wrote a specific provision in the 2019 Will to make sure these family members were disinherited." Finally, Steve uses Robbins's trial testimony to argue that because Effie decided to execute the eight warranty deeds some time after the 2019 Will was signed, this proves that Effie thought and acted independently from Steve.

¶16. While Robbins's testimony does support Steve's assertions, testimony from a number of disinterested witnesses demonstrates otherwise. Winter testified that Steve called her several times about meeting with his mother to change her will and prepare the warranty deeds. Steve and Cheviere also scheduled both of the appointments with Robbins, and Robbins testified that she never met with Effie without Steve present. As the chancellor correctly noted, Steve testified that "*we* were looking for a lawyer," including himself in the process. Steve took on the responsibility of gathering witnesses for the will execution and provided transportation to each visit. While no proof of compensation exists in the record, the chancellor noted in his final judgment that Steve's name was on all of Effie's bank accounts after Cheviere took Effie to remove Marcus's name from the accounts. Steve also obtained power of attorney over his mother, and the record reflects that Effie became increasingly more dependent on Steve with time. Most notably, the record reflects testimony

9

from Marcus, Doris, and Souter stating that Steve moved Effie into his home some time following the execution of the 2019 Will and warranty deeds. Each testified to having limited or no contact with Effie once she moved to Steve's home.

¶17. The record also reflects Effie's lack of knowledge and consideration of the consequences of executing these documents. While Steve and Robbins both testified that Effie had been upset over legal actions initiated by her family members, Doris testified that Effie expressed happiness over leaving some of her properties and assets to everyone in her immediate family. Souter testified that she was present with Effie at her home when Steve and Cheviere met with her a few days before the first meeting with Robbins. Souter stated that Effie told them how she wanted her assets distributed but that Cheviere was the one taking notes. Nothing in the record explains why Effie would want to disinherit her remaining grandchildren when they were originally included in the 2014 Will. Nothing in the record explains why she would want to leave her church, of which she and Eugene had been longtime, active members, $1,000 in 2014 but completely remove the church from the 2019 Will. Finally, numerous witnesses, including Dr. Lowrey, testified about the increasing severity of Effie's dementia and her inability to make decisions as a result. In light of this evidence, we agree with the chancellor that Steve failed to clearly and convincingly rebut the presumption of undue influence. We, therefore, find that substantial evidence supported the chancellor's decision that the 2019 Will and the eight warranty deeds were the product of Steve's undue influence and were, thus, invalid.

## CONCLUSION

¶18.    "We must consider the entire record before us and accept all those facts and reasonable inferences therefrom which support the chancellor's findings." ***Madden v. Rhodes***, 626 So. 2d 608, 616 (Miss. 1993).  In doing so, we find no error in the chancellor's findings and judgment, which declared the 2019 Will and eight warranty deeds to be invalid. Because the record includes no ruling concerning probate of the 2014 Will, we remand this case to the chancery court for any necessary further proceedings consistent with this opinion.

¶19.    **AFFIRMED AND REMANDED.**

**RANDOLPH, C.J., KING AND COLEMAN, P.JJ., MAXWELL, CHAMBERLIN, ISHEE, GRIFFIS AND SULLIVAN, JJ., CONCUR.**