DIAZ, J.,
for the court.
¶ 1. J.E.B., the minor herein, was born on August 28, 1990. He resided with his mother, L.P., and Ms father, J.B., until his mother’s death in May 1991. After her death, J.E.B. lived with his maternal grandparents, F.D.P., Sr. and J.P., and they were appointed his legal guardians on September 16,1991.
¶ 2. Subsequently, the maternal grandparents petitioned the Forrest County Chancery Court for adoption of J.E.B. The late Chancellor Honorable William Robert Taylor, Jr. entered a document entitled “Agreed Judgment of Adoption” on March 25, 1994. It is this agreement that gives rise to the current dispute. The adoption agreement reflects an agreement reached between the maternal grandparents and the father whereby the maternal grandparents were declared to be J.E.B.’s adoptive parents. The same agreement also specifically reserved the parental rights of the natural father. Further, the agreement granted both the natural father and the paternal grandmother, C.B., visitation rights. The visitation rights for the natural father and paternal grandmother were agreed upon because all of the parties involved literally lived, and continue to live, in the same neighborhood. There was never a termination of parental rights hearing nor an agreement to terminate the father’s parental rights.
¶ 3. Almost two and one-half years later, in August 1996, the maternal grandparents filed a Petition for Modification requesting modification of the visitation schedule. The father responded by filing a Petition to Vacate Adoption on April 3, 1997, and a Motion for Relief from Judgment of Adoption, or in the Alternative, Motion for Summary Judgment on March 2, 1998. He *951 claimed that the specific reservation of his parental rights was a failure to comply with the statute governing adoptions, thus rendering the judgment void. It was the maternal grandparents’ position that the father’s motions were barred by the statute of limitations. The chancellor granted the Motion for Relief from Judgment of Adoption, or in the Alternative, Motion for Summary Judgment in favor of the natural father and set aside the Judgment of Adoption on September 4,1999. It is from this judgment that the maternal grandfather now appeals. The maternal grandmother is now deceased. On appeal, the maternal grandfather cites the following issue as summarized by the Court:
I. WHETHER THE LOWER COURT ERRED IN SETTING ASIDE THE ADOPTION.
Finding error, we reverse and render.

ANALYSIS

¶ 4. Questions- of law are reviewed under the de novo standard. Department of Human Servs. v. Gaddis, 730 So.2d 1116, 1117 (Miss.1998). There are actually two questions before this Court: (1) whether the adoption is void as a matter of law and (2) whether the six-month statute of limitations set forth in Miss.Code Ann. § 93-17-15 (1994) should have barred the father’s motions in the chancery court. It is this Court’s opinion that this inquiry is purely a matter of law. Thus, the de novo standard is appropriate.
I. WHETHER THE LOWER COURT ERRED IN SETTING ASIDE THE ADOPTION.
¶ 5. The grandfather argues that Miss.Code Ann. § 93-17-15 should have precluded the father’s petition in the court below. The statute states that:
No action shall be brought to set aside any final decree of adoption, whether granted upon consent or personal process or on process by publication, except within six months of the entry thereof.
¶ 6. Furthermore, our legislature has declared it to be the public policy of the state that “no adoption proceedings shall be permitted to be set aside except for jurisdictional defects and for failure to file and prosecute the same under the provisions of this chapter.” Miss.Code Ann. § 93-17-17 (emphasis added). Thus, setting aside adoption decrees is disfavored even before six months has expired.
¶ 7. J.E.B. first began living with his maternal grandparents when he was less than a year old in May of 1991, shortly following his mother’s death. The maternal grandparents were appointed his legal guardians approximately four months later in September of 1991. The Agreed Judgment of Adoption was entered in March of 1994. It was not until approximately three years after the adoption agreement that the father filed a petition to have it vacated, and it was not until four years later that he filed the Motion for Relief of Judgment of Adoption, or in the Alternative, Motion for Summary Judgment. Thus, the grandfather asserts that because the father both voluntarily entered into the agreement and failed to raise any objections to the adoption within the following six-month period, the chancellor erred by vacating the adoption.
¶ 8. Conversely, the father claims that the Agreed Judgment of Adoption failed to comply with the statute governing final decrees. Specifically, his position is that because his parental rights were never terminated, the adoption was void as a matter of law. He further asserts that since it is void as a matter of law, the six-month limitations period simply does not apply. This was essentially the holding in the chancery court.
*952 ¶ 9. We disagree. There is no jurisdictional defect here. Thus, the adoption is not void. Under statute, an adoption decree shall, among other things, terminate the rights of parents who are not the spouse of the adopting parent. Miss.Code Ann. § 93-17-13 (Supp.2001) provides that “in addition to such other provisions as may be found by the court to be proper for the protection of the interests of the child,” all parental rights of the natural parents are cut off by an adoption, except in the case of a natural parent who is the spouse of an adopting parent.
¶ 10. In Humphrey v. Pannell, 710 So.2d 392 (Miss.1998), this Court dealt with an agreed decree retaining visitation rights in the natural father. There, the Agreed Decree provided that the natural father acknowledged the adoption, but the adoptive parents acknowledged that the natural father is the natural father and the Final Decree of Adoption should be modified to the extent that the natural father is recognized as such and that his parental rights were not terminated. Id. at 399. The Court noted that a parent giving up a child for adoption “can not retain all of his parental rights or else the adoption is rendered meaningless.” Id. The Court further stated that our adoption statutes “clearly provide a good illustration of the intent of the Legislature that the adoption process give rise to a new relationship between the adoptive parents and child which is not subject to endless legal contests.” Id. We further stated:
In the view of this Court, the public policy considerations favoring the permanence of adoptions are inconsistent with an interpretation of § 93-17-13 which would permit the sort of post-adoption modification of custody battles which have arisen in the present case. The “unless otherwise specifically provided” in § 93-17-13 language must be interpreted in light of the context of the adoption statutes as a whole, and these statutes are clearly written to foster legal stability in the relationship between adoptive parents and their children. In the view of this Court, the “unless otherwise provided” language was intended by the Legislature to provide natural and adoptive parents with the option of entering into limited arrangements such as post-adoption visitation agreements as long as the best interests of the child would be served by such an arrangement.
Post-adoption visitation arrangements are permitted in a number of states, and the “unless otherwise specifically provided” language in § 93-17-13 would appear to permit such arrangements.

Id.

¶ 11. We then went on to distinguish Humphrey from cases in other states allowing visitation rights by pointing out that no state allows the sort of “quasiadoption” which had been implemented in Humphrey. We then admitted that “a large number of states, in fact, do not even permit post-adoption visitations on grounds that this visitation is detrimental to the relationship between the adoptive parent and child.” Id. Most importantly to the case at bar, Humphrey states the following:
This Court considers it improper to incidentally rule upon the propriety of post-adoption visitations in the present case, however, and we leave a ruling on this important issue to future cases when the issue is squarely before this Court. This Court does conclude, however, that § 93-17-13 was not intended by the Legislature to grant a natural parent the right to weaken the legal bonds of the adoptive parent-child relationship by reserving the right to, in effect, sit and wait for the circumstances of the adop *953 tive family to materially' change and then divest the adoptive family of the custody of the child.
¶ 12. The Court finally held that the portion of the Agreed Decree which recognized the validity of the adoption, yet reserved parental rights in favor of Humphrey should not be interpreted to permit Humphrey to attempt to divest the Pan-nells of the custody of their adoptive child based upon a material change in circumstances. Id. However the Court nevertheless found that “the remaining provisions of the Agreed Decree regarding visitation and support to be a voluntary agreement between the parties that is in the best interests of [the child].” Id. at 401.
¶ 13. Clearly, Humphrey left open the question of whether these “post-adoption' visitations” are proper, as that' question was not “squarely before the Court.” We are now faced with the question of the effect of a post-adoption visitation agreement on the adoption itself.
¶ 14. The very nature of an adoption is to create a legally binding and unbreakable bond between the adoptive parents and the adopted child. Visitation agreements in adoption decrees thwart the very purpose of adoption. The adoption terminated all parental rights of the father. To find otherwise creates impermanencp and insecurity in the scheme of adoption. Therefore, we hold the language in the adoption decree granting visitation rights to the natural father to be mere surplus-age and to have no effect on the validity of the adoption itself. We have previously held that where a chancellor has awarded competing rights, one controls and the other is surplusage. See Gray v. Gray, 562 So.2d 79, 83 (Miss.1990).
¶ 15. Because there is no jurisdictional defect in the adoption decree,- it follows that the father’s attack on it is barred by the statute of limitations. Miss. Code Ann. § 93-17-15. He should not now be heard, years later, to set aside the decree because it allowed him to retain his parental rights. Because his action is clearly barred by the statute, there is no reason to consider the doctrines of judicial estoppel, clean hands, or res judicata. Finally, to the extent that he claims relief under Rule 60(b), he is likewise untimely. The motion, as to the allegations of fraud and misrepresentation was not made within six months and as to other claims was not made “within a reasonable time.” Miss. R. Civ. P. 60(b). Therefore, we reverse the chancery court’s judgment granting the father’s petition to vacate the adoption decree and its order vacating the adoption decree, and we render judgment reinstating the adoption decree.
¶ 16. REVERSED AND RENDERED.
PITTMAN, C.J., SMITH, P.J., EASLEY AND GRAVES, JJ„ CONCUR. COBB, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.
WALLER, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, P.J., AND CARLSON, J.