MYERS, P.J.,
for the Court.
¶ 1. Illinois Central Railroad Company filed a motion to intervene in the adoption of D.C.S., Jr., D.D.S., and D.J.S. by John Foster, Jr.[1] Finding that Illinois Central did not have standing to intervene in the adoption and that the motion was untimely filed, the trial court denied Illinois Central’s motion. Aggrieved, Illinois Central appeals arguing that: (1) the trial court erred in denying Illinois Central’s motion to intervene on the basis that it did not have standing; (2) the trial court erred in denying Illinois Central’s motion to intervene as being untimely filed; and (3) the trial court erred in failing to set aside the adoption. Finding that Illinois Central lacked standing to intervene and that its motion was brought outside the statute of limitations, we affirm.
FACTS
¶ 2. On June 26, 2006, Foster filed a petition for adoption in the Chancery Court of Jefferson County, seeking to adopt his grandchildren, D.C.S., Jr., D.D.S., and D.J.S. Foster’s petition was joined by his daughter, Virginia Smith, the natural mother of the children. Both Virginia and DeWayne Smith, the natural father of the children, filed their consent to adoption and release of their parental claims. Thereafter, on June 28, 2006, the chancellor approved the adoption, which was entered on June 30, 2006.
¶ 3. On June 26, 2007, approximately one year after the adoption, Illinois Central filed a motion to intervene and a complaint to set aside the adoption. In its complaint, Illinois Central alleged that Foster’s adoption of his grandchildren was fraudulent.
¶ 4. Prior to the adoption, on October 25, 2005, Foster filed a complaint in Warren County, Mississippi against Illinois Central for damages resulting from his exposure to asbestos and asbestos-containing products while he was employed at Illinois Central. A few months before Foster filed his tort claim against Illinois Central, a tumor was discovered in Foster’s lung. The diagnosing physician discussed Foster’s condition and his treatment options with Foster, along with his son and Virginia, who had accompanied Foster to the doctor. However, Foster refused any radiation or chemotherapy treatment. Approximately two weeks later, Foster returned to the doctor, with Virginia accompanying him. Foster’s tumor had enlarged, but Foster continued to refuse radiation or chemotherapy treatment. He agreed to hospice and home health care. Despite the recommendations of his doctors, Foster continued to refuse chemotherapy throughout his battle with cancer, and he passed away on August 7, 2006, thirty-seven days after the entry of the adoption.
¶ 5. In its complaint to set aside Foster’s adoption of his grandchildren, Illinois Central alleged that Foster and Virginia committed fraud by stating that Foster was a “fit, suitable, and proper person to adopt the said child,” and that he would “rear, train, and educate the minor children,” while both Foster and Virginia knew that Foster was dying from lung cancer. Illinois Central states that on *1009 January 3, 2007, while deposing Virginia in the Foster/Illinois Central asbestos case, it discovered that Foster had adopted his grandchildren. It then filed the motion to intervene and the complaint to set aside the adoption after investigating the adoption.
¶ 6. After conducting a hearing on Illinois Central’s motion to intervene and the complaint to set aside the adoption, the chancellor denied Illinois Central’s motion. The chancellor found that Illinois Central’s motion to intervene was untimely filed and that Illinois Central did not have standing to collaterally attack and object to Foster’s adoption of his grandchildren. Illinois Central now appeals the chancellor’s ruling.
STANDARD OF REVIEW
¶ 7. Regarding our standard of review, the supreme court has held:
This Court will reverse a chancellor only when he is manifestly wrong. A chancellor’s findings will not be disturbed unless he was manifestly wrong, clearly erroneous or an erroneous legal standard was applied. Where there is substantial evidence to support his findings, this Court is without the authority to disturb his conclusions, although it might have found otherwise as an original matter. Additionally, where the chancellor has made no specific findings, we will proceed on the assumption that he resolved all such fact issues in favor of the appellee. The chancellor’s decision must be upheld unless it is found to be contrary to the weight of the evidence or if it is manifestly wrong.
In re Estate of Johnson v. Moore, 735 So.2d 231, 236(¶ 24) (Miss.1999) (internal citations omitted).
DISCUSSION
¶ 8. On appeal, Illinois Central argues that because the adoption was fraudulently obtained and its rights will be substantially affected, it has standing to attack the adoption. Additionally, Illinois Central argues that it filed its motion to intervene in a timely manner under Mississippi Rule of Civil Procedure 60(b)(4) because the adoption is void as being fraudulently obtained.
1. Intervention; Standing
¶ 9. Upon a timely application, Mississippi Rule of Civil Procedure 24(a)(2) allows a party to intervene in an action “when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant’s interest is adequately represented by existing parties.” A chancellor’s ruling on a motion to intervene is reviewed under an abuse-of-discretion standard. Hayes v. Leflore County Bd. of Supervisors, 935 So.2d 1015, 1017(¶ 7) (Miss.2006).
¶ 10. Mississippi has followed federal practice and fashioned four “prerequisites to Rule 24(a)(2) — Intervention of Right: (l)[t]he would be intervenor must make a timely application; (2)[it] must have an interest in the subject matter of the action; (3)[it] must be so situated that disposition of the action may ‘as a practical matter’ impair or impede [its] ability to protect [its] interest; and (4)[its] interests must not already be adequately represented by the existing parties.” Perry County v. Ferguson, 618 So.2d 1270, 1271 (Miss.1993). Each of these prerequisites is required for intervention; here, the second factor is most relevant.
*1010 ¶ 11. “To intervene one must assert a ‘direct, substantial, legally protecta-ble interest’ in the proceedings.” Id. at 1272. “Economic interest alone is insufficient; a legally protected interest is required for intervention under Rule 24(a)(2).” Id.
¶ 12. Courts have addressed a wide variety of scenarios in determining whether a person or entity has a “direct, substantial, legally protectable interest” to allow an intervention. In Cummings v. Benderman, 681 So.2d 97, 101-02 (Miss.1996), the supreme court determined that the Democratic Party of the State of Mississippi could intervene to challenge a primary election for a seat in the Mississippi House of Representatives. The court also allowed an insurance company to intervene in Guaranty National Insurance Co. v. Pittman, 501 So.2d 377, 383-84 (Miss.1987), where the insurance company already had a liability policy on a party and failure to intervene in the action would have resulted in the insurance company having to pay a default judgment.
¶ 13. However, courts have denied a party’s petition to intervene when his oilier interest is purely economic. In Perry County, 618 So.2d at 1271, Perry County was attempting to intervene in an action against a paper mill for the discharge of toxins into the Leaf River. Perry County owned the land on which the paper mill was located and leased the property to the paper mill. Id. Perry County’s interest in the litigation was the fear that a judgment against the paper mill would result in the paper mill closing, thus causing revenue loss and job loss for Perry County. Id. In addition to their interest being adequately represented by the paper mill, the court found that Perry County’s interests were purely economic and denied their claim for intervention. Id. at 1273.
¶ 14. Similarly, this Court denied a doctor’s petition to intervene in a paternity action. In re Estate of Johnson, 779 So.2d 164, 167 (¶¶ 9-10) (Miss.Ct.App.2000). In Johnson, the doctor sought to intervene in a paternity action with the same parties who had filed a wrongful-death action against the doctor. Id. at 165-66(¶2). The doctor admitted his reason for intervention was to “avoid the cost of defending an action filed by the wrong party.” Id. at 167(¶ 9). This Court found that the doctor’s interest was solely an economic interest, and affirmed the chancellor’s finding that a intervention should not have been granted. Id. at (¶ 10).
¶ 15. In the present case, Illinois Central has a substantial financial interest in the adoption by Foster. However, this interest is purely economic. Foster’s adopted children will be able to join his natural children to maintain and continue Foster’s asbestos suit against Illinois Central because they are his dependants and beneficiaries. See 45 U.S.C. § 59. Additionally, the three adopted children are currently receiving approximately $1,932 per month from Foster’s retirement with Illinois Central, a benefit they could not receive had they not been adopted.
1f 16. Therefore, we find that Illinois Central’s claim for intervention is a purely economic interest; it does not want to continue paying retirement benefits to Foster’s adopted children. Because Illinois Central’s claim for intervention is based solely on its property and monetary concerns, intervention is precluded on this factor alone, and we need not address the other factors. See Cohen v. Cohen, 748 So.2d 91, 93(¶ 12) (Miss.1999).
¶ 17. Assuming that Illinois Central could otherwise pass the four-factor test to permit an intervention, its claim fails due to its lack of standing to attack the adoption. Based upon Mississippi *1011 Code Annotated section 93-17-7(1) (Rev. 2004), only a natural parent has a statutory right to object to the adoption of a child. In re 736 So.2d 1037, 1040(¶ 19) (Miss.1999). Clearly, Illinois Central is not a natural parent of the children, and it therefore lacks standing to object to their adoption.
¶ 18. The dissent argues that due to the “usual circumstances” surrounding this case, the standing requirements should be relaxed. The dissent relies heavily upon In re Estate of Reid v. Pluskat, 825 So.2d 1 (Miss.2002), to support its contentions. Pluskat involved a thirty-one-year-old attorney who was adopted by an unrelated, eighty-five-year-old woman. Id. at 3-4 (¶¶ 3-8). Testimony indicated that the attorney approached the elderly woman out of the blue, claiming to be interested in the history of her home. After he gained her trust, the adoption was executed as part of the attorney’s strategy to secure the woman’s property after her death; the attorney hoped to take it by intestate succession if a deed and two wills, all of which devised her property to him, were defeated as products of undue influence. Id. at 4-5 (¶¶ 5-6). The adoption was challenged by the woman’s natural heirs at law and was ultimately set aside as a product of undue influence (as were the wills and the deed) by the chancellor.
¶ 19. It is true, as the dissent states, that the supreme court allowed the chancellor to set aside the adoption in Pluskat. But the supreme court’s holding there was predicated on the specific scenario presented in that case. Id. at (¶ 24) (cautioning: “Let it be clear that our findings concerning the adoption in this case are specific to the facts of this case.”).
¶ 20. In affirming the chancellor, the supreme court in Pluskat was presented with the same two impediments to a third-party attack on adoptions faced by Illinois Central in the instant case: standing and the statute of limitations. Regarding the standing issue, the supreme court stated:
We recognize that the adoption of children is sacred, and the finality of adoptions is of the utmost necessity. However, we are not dealing with the adoption of a child in this case. We are dealing with an adult man, with a law degree, who gained the trust and dependence of an elderly lady. Other states have recognized this problem and found that the heirs of a deceased person who adopted an adult do have standing to attack the adoption. In re Sewall, 242 Cal.App.2d 208, 51 Cal.Rptr. 367, 378 (1966); Greene v. Fitzpatrick, 220 Ky. 590, 295 S.W. 896 (1927); Raymond v. Cooke, 226 Mass. 326, 115 N.E. 423 (1917). In accord with these cases, we find that Pluskat does have standing to attack the adoption of Michael Cupit.
Id. at 7(¶ 22). Here, the adoption is not challenged by an heir, nor were the children — aged twelve, nine, and six at the time of the adoption — adults, strangers to their grandfather, or culpable in the fraud Illinois Central has alleged.
¶ 21. The supreme court expressly limited its holding in Pluskat to the facts that case presented. The same facts are not present here, and therefore Illinois Central cannot have standing under Pluskat. Accordingly, the chancellor did not err in finding that Illinois Central lacked standing to intervene in the adoption. This issue is without merit.
2. Statute of Limitations
1Í 22. Mississippi Code Annotated section 93-17-15 (Rev.2004) provides that any action to set aside an adoption must be brought within six months after the entry of that adoption. Section 93-17-17 (Rev.2004) states that an adoption should not be “set aside except for jurisdictional defects *1012 and for failure to file and prosecute the same under the provisions of this chapter.”
¶ 23. “Upon reading these two Mississippi Code sections together, it becomes clear that the statute of limitations for challenging an adoption decree in Mississippi is [six] months after entry of the adoption decree except for jurisdictional defects and failure to file and prosecute the same under the adoption chapter of the Mississippi Code.” In re Adoption of M.D.T. v. H.S.L., 722 So.2d 702, 704(¶ 9) (Miss.1998). Courts have strictly applied this six-month limitations period. See id.; In re Adoption of R.M.P.C., 512 So.2d 702, 706-07 (Miss.1987).
¶ 24. In the case at bar, Illinois Central filed its complaint to set aside the adoption approximately one year after the entry of adoption.[2] On appeal, Illinois Central urges that its complaint should have been able to proceed under Rule 60(b)(4). Under Rule 60(b)(4), a movant can bring a motion to set aside a judgment when that judgment is void. A petition brought under Rule 60(b)(4) has no strict limitation, but it must be brought “within a reasonable time.” Illinois Central surmises that because the adoption was procured through fraud, the adoption is void, which allows it to proceed under Rule 60(b)(4) and bring the petition “within a reasonable time.” Illinois Central states that it first learned about the adoption while deposing Virginia on January 3, 2007, and that it filed its complaint to set aside the adoption on June 26, 2007, after an investigation. It argues that its complaint was filed “within a reasonable time” after its discovery of the adoption under Rule 60.
¶ 25. The supreme court addressed this argument in In re Adoption of J.E.B., F.D.P. v. 822 So.2d 949 (Miss.2002). There, the natural father sought to set aside the adoption of his child on the basis that the adoption was void because his parental rights were never terminated. Id. at 951(¶ 8). He also alleged fraud and misrepresentation, attempting to proceed under Rule 60(b), but the court expressly held that allegations of fraud or misrepresentation must be made within six months following the chancellor’s entry of the judgment of adoption, or they are untimely, even when the allegations of fraud are made in a Rule 60 motion.[3] Id. at 953(¶ 15).
¶ 26. Turning to the case at hand, we first note that Illinois Central did not claim Rule 60(b)(4) as the basis of its complaint to set aside the adoption; it cited only Rule 24. Therefore, we find that Illinois Central’s Rule 60(b)(4) argument is procedurally barred because it was never raised in the lower court for the chancellor to consider. Anderson v. State, 904 So.2d 973, 978 (¶¶ 16-17) (Miss.2004).[4]
¶ 27. Procedural bar notwithstanding, Illinois Central’s claim fails on the *1013 merits. The supreme court has clearly held that any petition to set aside an adoption alleging fraud must be brought within six months after the entry of the adoption. 822 So.2d at 953 (¶15). Illinois Central’s complaint was filed approximately one year after the entry of adoption; thus, we find that it was untimely filed.
¶ 28. The dissent argues that the chancellor’s judgment should be reversed and the case remanded for an evidentiary hearing to determine if fraud on the court was committed in procuring the adoption. This was unnecessary because the chancellor correctly found that Illinois Central did not have standing to intervene in the adoption. Notwithstanding that, in its motion to intervene, Illinois Central clearly laid out the evidence it had to support this claim. In reviewing Illinois Central’s motion, the chancellor, who is entrusted with the inherent authority to vacate judgments procured by fraud upon the court notwithstanding the rules or the adoption statute of limitations, declined to exercise that authority. See Pluskat, 825 So.2d at 7(¶ 23). “[W]e [must] recognize that the trial court is best able to determine whether a fraud has been perpetrated upon it. As a result, the chancellor’s determination of the issue is entitled to great weight.” Tirouda, 919 So.2d at 216(¶ 12).
¶ 29. In conclusion, we find that the strict, six-month statute of limitations imposed by Mississippi Code Annotated sections 93-17-15 and 93-17-17 is fatal to Illinois Central’s claim. Accordingly, this issue is without merit.
¶ 30. THE JUDGMENT OF THE JEFFERSON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE, P.J., AND ISHEE, J., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT. CARLTON, J., CONCURS IN PART ONE AND IN THE RESULT. GRIFFIS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY ROBERTS, J., AND JOINED IN PART BY MAXWELL, J. IRVING, J., NOT PARTICIPATING.

. Pursuant to Mississippi Code Annotated sections 93-17-25 to -31 (Rev.2004), initials and fictitious names are substituted to maintain confidentiality in an adoption case.

. The adoption was entered on June 30, 2006, and Illinois Central’s complaint to set aside the adoption was filed on June 26, 2007.

. Previously, the supreme court had held open the possibility that Rule 60 allowed fraud- or misrepresentation-based attacks on adoption judgments outside of the six-month statute of limitations; it had rejected such an argument in H.S.L. by stating that, even if it applied, Rule 60 offered no relief under the facts of that case. H.S.L., 722 So.2d at 705 (¶¶ 15-16).

. The dissent argues that the procedural bar should not apply because of the unusual circumstances of this case. However, the cases cited by the dissent are distinguishable on this point. The courts in Pluskat and Tirouda v. State, 919 So.2d 211, 216(¶ 12) (Miss.Ct.App.2005), relaxed time limitations placed on the parties by the statute of limitations and the rules of civil procedure; they did not allow new arguments to be raised on appeal.