# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-01065-COA

GARY WAYNE STACKS                                              APPELLANT

v.

DANIEL SMITH, NICOLE KINARD SMITH,                            APPELLEES
AND RICKY RAAB

DATE OF JUDGMENT:              06/27/2018
TRIAL JUDGE:                   HON. EDWARD C. FENWICK
COURT FROM WHICH APPEALED:     CHOCTAW COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:        TIMOTHY C. HUDSON
ATTORNEY FOR APPELLEES:        MARK G. WILLIAMSON
NATURE OF THE CASE:            CIVIL - ADOPTION
DISPOSITION:                   REVERSED AND REMANDED - 02/20/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**J. WILSON, P.J., FOR THE COURT:**

¶1.     Gary Wayne Stacks's biological daughter, B.R., was adopted without notice to Stacks while he was incarcerated. After Stacks was released and learned of the adoption, he filed a petition to set aside the adoption and for other relief. Stacks alleged that the adoption decree should be set aside because it was obtained through a fraud on the court and because he was not given notice of the proceeding or made a party. The chancery court dismissed Stacks's petition, holding that it was barred by the six-month statute of limitations for actions to set aside a final decree of adoption. Miss. Code Ann. § 93-17-15 (Rev. 2018). (Stacks filed his petition six months and seven days after the adoption decree was entered.) Stacks appeals from the dismissal of his petition.

¶2. We hold that the chancery court erred by dismissing Stacks's petition. Stacks's claim of fraud on the court would, if proven, establish a basis for setting aside the adoption notwithstanding the statute of limitations. In addition, Stacks's allegations that prior to the adoption, he had a substantial relationship with B.R. and was known to be her father would also, if proven, justify setting aside the adoption despite the statute of limitations. If Stacks had a substantial relationship with B.R. prior to the adoption, then he had a right to notice of the adoption and was a necessary party to the adoption proceeding, and the failure to notify him and join him as a party would render the adoption decree void. Because Stacks's petition alleged viable grounds for setting aside the adoption despite the expiration of the limitations period, it should not have been dismissed as a matter of law or without a hearing. Therefore, we reverse and remand for further proceedings consistent with this opinion.

## FACTS[1] AND PROCEDURAL HISTORY

¶3. In 2012, Rhonda Raab gave birth to a daughter, B.R. Rhonda's then-husband, Ricky Raab, was listed as the father on B.R.'s birth certificate. Rhonda and Ricky separated at some point. The record is unclear as to when they separated or whether they ever divorced. In April 2017, Rhonda passed away. In May 2017, Daniel and Nicole Smith filed a petition to adopt B.R. in the Choctaw County Chancery Court. Apparently, the Smiths are related to Rhonda, though the record does not explain how they are related. In support of the Smiths' petition, Ricky signed under oath a "Voluntary Release of All Parental Rights and Consent to Adoption" in which he claimed to be B.R.'s "legal and biological father." The chancery

---

[1] For purposes of this appeal, we accept the well-pled factual allegations of Stacks's petition as true. *Lagniappe Logistics Inc. v. Buras*, 199 So. 3d 675, 677 (¶5) (Miss. 2016).

2

court granted the petition and entered a decree of adoption on June 13, 2017.[2]

¶4.    On December 20, 2017, Stacks filed a "Petition to Disestablish Paternity, to Establish Paternity, for Determination of Custody, to Set Aside Adoption, and for Other Relief," naming the Smiths and Ricky as defendants. Stacks alleged that in 2011 he had a romantic relationship with Rhonda and that he was B.R.'s biological father. Stacks further alleged that "all parties ha[d] acknowledged him as [B.R.'s] natural father." Stacks alleged that Ricky had "never had any interaction with [B.R.] and ha[d] always vehemently denied his paternity to [B.R.]." Stacks alleged that he (Stacks) had "raised" B.R., that he had a "good and loving relationship" with her, and that she lived with him until she was four years old. However, in 2016, Stacks had been incarcerated for violations of the terms of his supervised release. Stacks had "reason to believe" that the Smiths had adopted B.R. after Rhonda's death while he was still in prison.[3] Stacks believed that the Smiths had obtained the adoption by "defraud[ing] the [c]ourt." Stacks alleged that he was not notified of the adoption proceeding and that the Smiths "deliberately failed to name [him] as a party to the [proceeding]." Stacks "assumed" that the Smiths "purposefully misrepresented to the [c]ourt that [Ricky] was [B.R.'s] father . . . or that the natural father was unknown." Stacks alleged that Ricky may have "colluded with the Smiths in representing himself to be [B.R.'s] natural father." Stacks asked the court to set aside any adoption because he "was not made a party to the [adoption]

---

[2] In the present case, the chancery court reviewed the sealed file from the adoption proceeding, but no part of that file was made a part of the record in this case. The court quoted Ricky's release and consent in its final judgment in this case.

[3] Because adoption proceedings are confidential, Miss. Code Ann. § 93-17-25 (Rev. 2018), Stacks could not be certain if or when the adoption had occurred.

3

suit" and because the adoption was obtained by "an intentional misrepresentation to defraud the [c]ourt." Stacks alleged that he was "a fit and suitable person" to have custody of B.R. and that it was in her best interest for him to have custody.

¶5. The Smiths and Ricky eventually filed two different joint motions to dismiss Stacks's petition. In their first motion, they argued that Stacks's petition was barred by the statute of limitations because the petition was filed six months and seven days after a final decree of adoption was entered.[4] In their second motion, they argued that Stacks lacked standing to contest the adoption because he had "no legal documents" or "DNA results" to show that he was B.R.'s biological father.

¶6. Stacks responded to the defendants' motions the next day. In his response, he alleged that he was present at the hospital when B.R. was born and that he and Rhonda lived together with B.R. from B.R.'s birth until April 2012. He also alleged that he and Rhonda "lived together on and off for the next four . . . years, and several times when [Rhonda] moved out, the child was left in [his] care." Stacks further alleged that Rhonda told B.R. that he was her father and that he "acted as [B.R.'s] father." Stacks stated that he had been incarcerated from August 2016 to October 2017, that the Smiths adopted B.R. while he was incarcerated without notice to him, and that the defendants knew or should have known that Ricky was not B.R.'s father. Along with his response to the motions to dismiss, Stacks also filed a motion for DNA testing to establish paternity and a motion for an expedited hearing.

---

[4] *See* Miss. Code Ann. § 93-17-15 ("No action shall be brought to set aside any final decree of adoption, whether granted upon consent or personal process or on process by publication, except within six (6) months of the entry thereof.").

4

¶7. The Smiths and Ricky subsequently filed a joint answer to Stacks's petition together with a "Counter-Petition for Determination of Rights," a "Counter-Petition to Terminate Parental Rights," and a "Counter-Petition to Determine Custody." In their answer, the Smiths and Ricky denied Stacks's allegations that he was B.R.'s father and that his paternity was known to them prior to B.R.'s adoption. They stated that they denied those allegations because they had "no personal/direct knowledge to either admit or deny" them. In their counter-petitions, the Smiths and Ricky did not specifically claim that Ricky was B.R.'s biological father. In addition, they admitted that "around the date of conception," Rhonda was "rumored" to have had "an extramarital affair with a man in Ohio," was "seeing a man in Oxford," and "would also take off for days at a time, telling nobody of her whereabouts." The Smiths and Ricky alleged that the "first time any of [them] saw or heard anything about [Stacks] was after Rhonda was four of five months pregnant." They did not state what they "heard about" Stacks at that time. They argued that Stacks's petition should be dismissed. In addition, they argued that if Stacks's paternity was established, his parental rights should be terminated because, inter alia, he had deserted, abandoned, or neglected B.R.

¶8. The parties subsequently agreed to DNA testing. The test results showed a 99.99% probability that Stacks is B.R.'s father.

¶9. At a hearing on May 8, 2018, the chancellor heard arguments on the defendants' motions to dismiss; however, the chancellor refused Stacks's request to put on testimony because he concluded that the motions raised pure questions of law. On June 27, 2018, the court entered an opinion and final judgment dismissing Stacks's petition. The court ruled

5

that the petition was barred by the statute of limitations. The court also ruled that Stacks was not entitled to notice of the adoption because Ricky had consented to the adoption and had claimed, under oath, that he was B.R.'s "legal and biological father." The court reasoned "that only the legal and presumptive father, Ricky Raab, was entitled to notice of [B.R.'s] adoption." For essentially the same reason, the court also held that Stacks lacked "standing" to object to the adoption. Stacks appealed.

**ANALYSIS**

¶10. A dismissal based on the statute of limitations presents a question of law that this Court reviews de novo. *Anderson v. R & D Foods Inc.*, 913 So. 2d 394, 397 (¶7) (Miss. Ct. App. 2005). We accept the well-pled factual allegations of the petition as true. *Lagniappe Logistics Inc.*, 199 So. 3d at 677 (¶5).

**I.      Fraud on the Court**

¶11. In his petition to set aside the adoption, Stacks specifically alleged that the adoption was obtained through a fraud on the court. Moreover, Stacks's allegations that the Smiths and Ricky knowingly misrepresented to the court that Ricky was B.R.'s biological father certainly support such a claim. Nonetheless, the chancery court dismissed the petition without addressing the alleged fraud because the court concluded that the petition was barred by the statute of limitations and that Stacks was not entitled to notice of the adoption. On appeal, the Smiths and Ricky further contend that Stacks's fraud-on-the-court argument is "procedurally barred" because Stacks did not cite Mississippi Rule of Civil Procedure 60(b)(6) in the chancery court.

6

¶12. We address the alleged procedural bar first. The Smiths and Ricky do not argue that Stacks failed to allege fraud on the court in his petition. Indeed, Stacks's petition very clearly and specifically alleged a fraud on the court. Rather, the Smiths and Ricky argue that Stacks waived this issue solely because he did not cite Rule 60(b)(6) during the proceedings in the chancery court. However, their argument ignores the well-settled principle that a court possesses the *inherent* power to set aside a judgment based on fraud on the court. Therefore, it was unnecessary for Stacks to cite any particular rule in his petition.

¶13. In *Doe v. Smith*, 200 So. 3d 1028 (Miss. 2016), our Supreme Court held that a father could bring an "independent action" to set aside an adoption that had been obtained through a fraud upon the court. *Id.* at 1034-35 (¶¶23-24). In *Doe*, the mother had allowed her son to be adopted by falsely claiming in her consent to the adoption that she was unaware of the identity of the child's natural father. *Id.* at 1030 (¶1). Her deception caused the court to grant the adoption. *Id.* When the biological father learned of the mother's deception, he petitioned the court to set aside the adoption based upon a fraud on the court. *Id.* at 1031 (¶¶6-7). The father subsequently established his paternity through a DNA test, and the mother eventually admitted that she knew the father's identity at the time of the adoption and deceived the court by claiming otherwise. *Id.* at 1031-32 (¶¶8-10). Following a hearing, the chancellor set aside the adoption based on a fraud on the court. *Id.* at 1032 (¶11). On appeal, the Supreme Court affirmed. *Id.* at 1033-34 (¶19). The Supreme Court held that "an intentional fraud aimed solely to circumvent a natural parent's statutorily mandated consent to an adoption" was exactly the type of fraud upon the court that would warrant setting aside

7

a judgment.  *Id.* at 1033 (¶17) (footnote omitted).  The Court also held that although the father was a nonparty to the original adoption proceeding, the chancellor had the authority to consider his petition as an "independent action" to set aside the adoption because it had been "obtained by a fraud on the court."  *Id.* at 1034-35 (¶¶23-24).

¶14.    In *Doe*, the Court described the father's "independent action" as "authorize[d]" by or "under" Mississippi Rule of Civil Procedure 60(b)(6), *id.* at 1034 (¶¶20, 24), but that description is incomplete.  Rule 60(b) states in relevant part:

> This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court. . . .  The procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action and not otherwise.

M.R.C.P. 60(b).  Our Rule 60(b) "is very nearly identical" to the parallel federal rule.  *State ex rel. Miss. Bureau of Narcotics v. One (1) Chevrolet Nova Auto.*, 573 So. 2d 787, 789 (Miss. 1990).  Therefore, we typically "consider as authoritative federal constructions" of the federal rule "when determining what our construction of our rule ought to be."  *Id.*

¶15.    Federal courts have consistently held that the parallel language of the federal rule "is *not* an affirmative grant of power but merely allows continuation of whatever power the court would have had to entertain an independent action if the rule had not been adopted."  11 Charles Alan Wright & Arthur R. Miller et al., *Federal Practice and Procedure* § 2868, at 555 (3d ed. 2012) (emphasis added).[5]  Prior to the adoption of Rule 60, courts already

---

[5] *Accord Brown v. Estate of Johnson*, 822 So. 2d 1072, 1073 (¶4) (Miss. Ct. App. 2002) ("The language of Rule 60(b) does not create a right of independent action to set aside a judgment where none existed before.  Rather, its purpose is simply to explicitly acknowledge the long-existing right of a party to collaterally attack a void judgment.").

possessed the *inherent* power to set aside a judgment that had been obtained by fraud upon the court. 11 Wright & Miller, *supra*, § 2870, at 572; *Universal Oil Prod. Co. v. Root Ref. Co.*, 328 U.S. 575, 580 (1946). A court's "inherent power . . . to vacate a fraudulently obtained judgment—even years after the judgment was entered—has long been recognized by the [United States] Supreme Court." *In re Bressman*, 874 F.3d 142, 149 (3d Cir. 2017) (citing *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 248-49 (1944)). Indeed, that power "was firmly established in English practice long before the foundation of our Republic." *Hazel-Atlas Glass Co.*, 332 U.S. at 244. Thus, Rule 60 is not the *source* of a court's power to set aside a judgment due to a fraud upon the court but simply recognizes the court's independent, inherent power to grant such relief. It follows that "an independent action alleging fraud upon the court" appeals to the court's inherent power and "is completely distinct from a motion under Rule 60(b)." *In re Bressman*, 874 F.3d at 149 (quoting *Herring v. United States*, 424 F.3d 384, 389 (3d Cir. 2005)); *see also Kodekey Elecs. Inc. v. Mechanex Corp.*, 500 F.2d 110, 112 (10th Cir. 1974) (explaining that Rule 60(b)'s "provisions specifically do not apply to an independent action" (quotation mark omitted)). In addition, "there are no formal pleading requirements" for "a pleading invoking the court's inherent power to grant relief for fraud upon the court." *United States v. Buck*, 281 F.3d 1336, 1342 (10th Cir. 2002) (brackets omitted).

¶16.    The Mississippi Supreme Court has also recognized that Rule 60(b) is not the source of a court's authority to entertain an independent action for relief from a judgment obtained by fraud upon the court. In *Trim v. Trim*, 33 So. 3d 471 (Miss. 2010), the Court held that the

9

intentional filing of a substantially false financial disclosure statement in a divorce case was a fraud upon the court and warranted relief from the final judgment of divorce. *Id.* at 472-73 (¶3). The Court indicated that a chancery court's "equitable powers" authorize it to grant such relief separate and apart from Rule 60(b). *Id.* at 477 (¶14).

¶17. Similarly, in *In re Estate of Reid*, 825 So. 2d 1 (Miss. 2002), the Supreme Court recognized that "courts have the *inherent* power to vacate a judgment at a subsequent term of court when the judgment is void because of fraud in its acquisition." *Id.* at 7 (¶23) (emphasis added). And in *In re Adoption of D.C.S. Jr.*, 44 So. 3d 1006 (Miss. Ct. App. 2009), this Court stated that "the chancellor . . . is entrusted with the inherent authority to vacate judgments procured by a fraud upon the court." *Id.* at 1013 (¶28).

¶18. Because the chancery court possessed the *inherent* power to set aside a judgment obtained by a fraud on the court, it was unnecessary for Stacks to cite Rule 60(b)(6) as authority for his petition. Stacks's petition clearly alleged fraud on the court as a basis for setting aside the adoption. That is all that is required of such a pleading. Stacks did not waive his right to relief just because he did not cite Rule 60(b)(6).[6]

¶19. On the merits, we hold that the chancery court erred by dismissing Stacks's petition based on the statute of limitations. This Court has specifically recognized that "the

---

[6] The Smiths' and Ricky's argument to the contrary relies on this Court's decision in *D.C.S. Jr.*, *supra*. However, that case is inapposite. In *D.C.S. Jr.*, this Court held that a party had waived an argument under Rule 60(b)(4) by not citing the rule in the chancery court. *D.C.S. Jr.*, 44 So. 3d at 1012 (¶26). However, the chancellor had considered and rejected the merits of the party's claim of a fraud on the court. *Id.* at 1013 (¶28). This Court affirmed, stating that "the chancellor, who is entrusted with the inherent authority to vacate judgments procured by fraud upon the court notwithstanding the rules or the adoption statute of limitations, declined to exercise that authority." *Id.*

10

chancellor . . . is entrusted with the inherent authority to vacate judgments procured by fraud upon the court *notwithstanding . . . the adoption statute of limitations*." *D.C.S. Jr.*, 44 So. 3d at 1013 (¶28) (emphasis added).[7] In *D.C.S. Jr.*, this Court affirmed the chancellor's finding that there had *not* been a fraud on court. Therefore, the six-month statute of limitations in section 93-17-15 barred the petition to set aside the prior adoption. *Id.* at (¶¶28-29). In this case, however, Stacks's petition clearly alleged facts that would support a claim that the adoption was obtained by a fraud upon the court. Yet, without hearing any testimony, the chancery court dismissed the petition based on the statute of limitations. The chancery court erred by dismissing the case without an evidentiary hearing because proof that the adoption was obtained by a fraud upon the court would permit the court to set aside the judgment "*notwithstanding . . . the adoption statute of limitations*." *Id.* at (¶28) (emphasis added). Therefore, we must reverse the judgment of the chancery court and remand for a hearing and findings on Stacks's claim of a fraud on the court.

## II.    Notice of the Adoption

¶20.    In general, an action to set aside a final decree of adoption must be filed within six

---

[7] *See also, e.g.*, *Finch v. Finch*, 137 So. 3d 227, 234 (¶18) (Miss. 2014) ("[N]o time constraints will limit the court's ability to remedy [a] fraud [on the court]."); *Trim*, 33 So. 3d at 473 (¶3) ("[T]here is no limitation of time restricting the court from affording a remedy [for a fraud on the court]."); *Smith By & Through Young v. Estate of King*, 501 So. 2d 1120, 1122-23 (Miss. 1987) (holding that a final decree adjudicating heirship may be set aside based on a fraud upon the court despite the running of the statute of limitations for a petition to determine heirship); 47 Am. Jur. 2d *Judgments* § 665, at 62 (2017) ("Courts have historically enjoyed the inherent authority to correct judgments obtained by the commission of fraud on the court, regardless of ordinary procedural bars like statutes of limitations or the time limits imposed on motions to set aside judgments for fraud, because a decision produced by fraud on the court is not in essence a decision at all, and never becomes final." (citing *United States v. Williams*, 790 F.3d 1059, 1071 (10th Cir. 2015))).

months of the entry of the decree. Miss. Code Ann. § 93-17-15. However, our Supreme Court has held that "jurisdictional defects" in the adoption decree are an exception to the six-month statute of limitations. *In re Adoption of M.D.T.*, 722 So. 2d 702, 704 (¶¶7-9) (Miss. 1998) (citing Miss. Code Ann. §§ 93-17-15 & -17). The failure to join a parent of the child is a jurisdictional defect. *Id.* at (¶11); *Naveda v. Ahumada*, 381 So. 2d 147, 147-49 (Miss. 1980).

¶21. Under the adoption statutes, a "parent" is entitled to notice and is a necessary party to an adoption proceeding. Miss. Code Ann. § 93-17-5(1)(a). However, when the Smiths petitioned to adopt B.R. in May 2017, Stacks had not established his paternity and had not established any legal rights with respect to B.R. For that reason, the chancery court held that Stacks was not entitled to notice. The court noted that B.R. was five years old, and yet Stacks had not taken any legal action to establish his paternity. The court reasoned "that only the legal presumptive father, Ricky Raab, was entitled to notice of this adoption." However, we hold that the chancery court erred by rejecting Stacks's lack-of-notice claim as a matter of law and without a hearing.

¶22. The Mississippi Supreme Court and the United States Supreme Court have both stated that "[p]arental rights do not spring full-blown from the biological connection between the parent and child. *They require relationships more enduring.*" *Strickland v. Day*, 239 So. 3d 486, 491 (¶19) (Miss. 2018) (quoting *Lehr v. Robertson*, 463 U.S. 248, 260 (1983)). A father's "biological connection alone is not enough to establish parentage" if "he fails to establish that he has had any substantial relationship with the child." *Id.*

12

¶23. A biological father who has not established his paternity has a constitutional right to notice of an adoption proceeding if he "has attempted to establish a substantial relationship with the child." *Humphrey v. Pannell*, 710 So. 2d 392, 396 (¶20) (Miss. 1998); *Smith v. Malouf*, 722 So. 2d 490, 494 (¶14) (Miss. 1998); *accord In re Adoption of A.S.E.L.*, 111 So. 3d 1243, 1248 (¶22) (Miss. Ct. App. 2013). The converse is also true: a biological father who makes no effort to establish paternity or a substantial relationship with his child does not have a constitutional right to notice of the filing of an adoption petition. *A.S.E.L.*, 111 So. 3d at 1249 (¶25). Thus, a chancery court's "finding" that a biological father failed to establish his paternity or a substantial relationship with the child prior to the adoption "negates [the father's] right to constitutional protection of his relationship with [the child]." *Id.* And, under those circumstances, the lack of notice to the father does not, in and of itself, require the adoption to be set aside. *Id.*[8]

---

[8] Judge Greenlee's separate opinion argues that Stacks was entitled to notice, as a matter of law, based solely on his biological connection to B.R. The separate opinion relies on a 2016 amendment to section 93-17-5 that deleted the rule that "[i]n the case of a child born out of wedlock, the father shall not have a right to object to an adoption unless he has demonstrated, within the period ending thirty (30) days after the birth of the child, a full commitment to the responsibilities of parenthood." Miss. Code Ann. § 93-17-5(3) (Rev. 2013); 2016 Miss. Laws ch. 431, § 19 (H.B. 1240). However, in deleting this specific requirement under former subsection (3), the Legislature did not amend the relevant notice requirements of subsection (1). Moreover, there is nothing in the amendment to suggest that the Legislature intended to impose a new requirement of notice to a biological father who has never established paternity or any substantial relationship with the child. Such an interpretation of the statute would leave an adoption decree perpetually vulnerable to challenge by a previously unknown biological father. We decline to interpret the statute to impose such an extreme and, in some cases, practically impossible notice requirement. Rather, we simply interpret the statute in a manner consistent with the longstanding constitutional requirement of notice to a biological father who has established a substantial relationship with the child prior to the adoption.

¶24. In the present case, Stacks did not take any legal action to establish his paternity prior to the adoption. In addition, the parties dispute whether Stacks had established a substantial relationship with B.R. Stacks alleges that he "raised" B.R. to the age of four (until his probation was revoked), that B.R. knew him as her father, and that he had a substantial relationship with her. Stacks also alleges that the Smiths knew that he was B.R.'s father and knew that he had a relationship with her. However, the Smiths have denied Stacks's allegations. The chancery court did not hear testimony, consider any evidence, or make any findings concerning this factual dispute. Instead, the chancery court ruled that Stacks was not entitled to notice as a matter of law because he failed to take legal action to establish his paternity prior to the adoption.

¶25. We hold that the chancery court erred by dismissing the petition as a matter of law. The chancery court was required to hold a hearing and make findings on this issue because Stacks had a constitutional right to notice *if* he had established a substantial relationship with B.R. prior to the filing of the adoption petition. If he had established such a relationship, then the failure to give him notice and join him as a party to the adoption proceeding is a jurisdictional defect, and the resulting adoption decree must be set aside notwithstanding the statute of limitations. Therefore, we reverse and remand the case for a hearing to address Stacks's claim that he was entitled to notice of the adoption.

**CONCLUSION**

¶26. The judgment of the chancery court is reversed. The case is remanded for a hearing to determine whether the challenged adoption decree must be set aside (1) because it was

14

obtained by a fraud on the court or (2) because Stacks had established a substantial relationship with B.R. such that he had a constitutional right to notice.

¶27.  **REVERSED AND REMANDED.**

**WESTBROOKS, TINDELL, McCARTY AND C. WILSON, JJ., CONCUR. McDONALD, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.  GREENLEE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED IN PART BY WESTBROOKS AND McDONALD, JJ.  CARLTON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, C.J., AND LAWRENCE, J.**

**GREENLEE, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶28.  I concur in part and dissent in part.  I concur that the judgment of the chancery court should be reversed but for different reasons than the majority.  I would find that Stacks was procedurally barred from asserting a claim that the adoption should be set aside because it was allegedly obtained by a fraud on the court.  But I would also reverse the chancery court's dismissal of Stacks's notice-based claim for further proceedings because, as B.R.'s natural father, Stacks was entitled to notice of the adoption proceeding.

¶29.  As discussed by the majority, the Smiths' petition to adopt B.R. was granted on June 13, 2017.  On December 20, 2017, Stacks filed a petition to disestablish Ricky's paternity, to establish his paternity, to determine custody, to set aside the adoption, and for other relief.  In the petition, Stacks alleged that he was B.R.'s natural father, he did not receive notice of the adoption proceeding, and the adoption was granted based on fraud.  In their response, the Smiths and Ricky admitted that Stacks was not served with notice of the adoption proceedings.  Subsequently, in March 2018, Stacks filed a motion for paternity testing, and

15

the results showed a 99.99% probability that he was B.R.'s natural father. Nevertheless, the chancery court dismissed Stacks's petition.

¶30. On appeal, Stacks claims the chancellor should have considered his petition to set aside the adoption under Rule 60(b)(6). Stacks argues that the Appellees committed fraud by concealing his identity from the chancery court. And in support of his argument, he points out that he did not receive notice of the adoption proceedings.

¶31. "Sections (1) to (5) of Rule 60(b) provide specific instances when a party may be relieved of a judgment or order." 2 Jeffrey Jackson, Donald E. Campbell & Justin L. Matheny, *Encyclopedia of Mississippi Law* § 22:15, Westlaw (database updated May 2019). "For those situations that do not fall under one of the enumerated categories of Rule 60(b)(1) to (5), Rule 60(b)(6) allows a judgment or order to be set aside for 'any other reason justifying relief from the judgment.'" *Id*. And our supreme court has held that a Rule 60(b)(6) motion may be filed as an "independent action." *Doe v. Smith*, 200 So. 3d 1028, 1030, 1034 (¶¶2, 20) (Miss. 2016) (citing M.R.C.P. 60(b)(6)); *see also* 2 Jackson & Campbell et al., *supra*, § 22:16.

¶32. The Smiths and Ricky assert that Stacks's claim is procedurally barred because it was not raised in the chancery court. They point out that "[Rule] 60(b)(6) was not . . . cited anywhere in [Stacks's] pleadings. Nor did he bring up or argue [Rule] 60(b)(6) at any time. . . ."

¶33. In a similar case, an appellant argued that the chancellor should have considered the complaint under Rule 60(b)(4). *In re Adoption of D.C.S. Jr.*, 44 So. 3d 1006, 1012 (¶24)

16

(Miss. Ct. App. 2009). Under that rule, "a movant can bring a motion to set aside a judgment when that judgment is void." *Id*. However, this Court noted that the appellant "did not claim Rule 60(b)(4) as the basis of its complaint to set aside the adoption; it cited only Rule 24." *Id*. at (¶26). Therefore, this Court held that the appellant's argument was "procedurally barred because it was never raised in the [chancery] court for the chancellor to consider." *Id*. (citing *Anderson v. State*, 904 So. 2d 973, 978 (¶¶16-17) (Miss. 2004)). I would likewise find that Stacks's Rule 60(b) argument is procedurally barred.

¶34. However, after a de novo review, Stacks was entitled to relief under Mississippi Code Annotated section 93-17-17 (Rev. 2018).[9] Pursuant to this statute, an adoption may be set aside for "jurisdictional defects" and "for failure to file and prosecute . . . under the provisions of [Title 93, Chapter 17 of the Mississippi Code Annotated]." Miss. Code Ann. § 93-17-17.

¶35. Mississippi Code Annotated section 93-17-8 sets forth the procedure that the chancery court must follow when an adoption becomes a contested matter. This section provides that the court "[s]hall determine first whether or not the objecting parent is entitled to so object under the criteria of section 93-17-7 . . . ." Miss. Code Ann. § 93-17-8(1)(c) (Rev. 2018). According to section 93-17-7:

> No person, whether claiming to be the parent of the child or not, has standing to object to the adoption if:
>
> > (a) A final judgment for adoption that comports with all applicable state

[9] "When reviewing a trial court's grant . . . of a motion to dismiss, this Court applies a de novo standard of review." *Bryant v. Dent*, 270 So. 3d 976, 978 (¶8) (Miss. Ct. App. 2018).

and federal laws has been entered by a court; and

> (b) *Notice to the parties of the action, whether known or unknown, has been made in compliance with [s]ection 93-17-5.*

Miss. Code Ann. § 93-17-7(2) (Rev. 2018) (emphasis added). Section 93-17-5 provides that "[t]he parents" shall be made parties to the adoption proceeding. Miss. Code Ann. § 93-17-5(1)(a) (Rev. 2018). Accordingly, Stacks was entitled to notice.

¶36. Such a decision is consistent with Mississippi law. In *Smith v. Malouf*, our supreme court held that "a natural unwed father may, in certain circumstances, have a right to be notified or to withhold his consent to an adoption." *In re Adoption of A.S.E.L.*, 111 So. 3d 1243, 1248 (¶23) (Miss. Ct. App. 2013) (citing *Smith v. Malouf*, 722 So. 2d 490, 497 (¶30) (Miss. 1998)). "The Mississippi Legislature thereafter amended section 93-17-5(3), allowing a father to have the right to object to an adoption if he has demonstrated 'a full commitment to the responsibilities of parenthood' within thirty days after the birth of the child." *Id.* (citing *Smith*, 722 So. 2d at 494 n.1). But in 2016, the Legislature amended section 93-17-5 again, removing the "full commitment to the responsibilities of parenthood" language. Today, section 93-17-5 states, without qualification, that "the parents" shall be made parties to the adoption proceeding. Stacks is B.R.'s natural parent.

¶37. The Smiths and Ricky claimed and the chancellor found that Stacks's petition to set aside the adoption was barred by the statute of limitations under section 93-17-15. This section provides: "No action shall be brought to set aside any final decree of adoption, whether granted upon consent or personal process or on process by publication, except within six (6) months of the entry thereof." Miss. Code Ann. § 93-17-15. However, this section is

18

inapplicable because Stacks did not consent to the adoption, nor was he served with process.

¶38.    Because Stacks was not notified of the adoption proceedings, I would reverse the judgment of the chancery court for a determination of the child's custody "in accord with the best interests of the child and the rights of the parties . . . ." Miss. Code Ann. § 93-17-8(1)(c). At that time, the chancellor could consider Stacks's criminal history and the fact that he waited almost six years to establish paternity. In the event the chancellor finds that custody with Stacks is in the child's best interests, the chancery court could also order that Stacks reimburse the adopting parents reasonable support for the child. Miss. Code Ann. § 93-17-8(7).

**WESTBROOKS AND McDONALD, JJ., JOIN THIS OPINION IN PART.**

**CARLTON, P.J., DISSENTING:**

¶39.    I respectfully dissent from the majority's opinion. The majority finds that the chancellor was required to hold a hearing and make findings of fact on Stacks's claim that he was entitled to notice of the adoption and accordingly reverses and remands this matter for a hearing. However, as found by the chancellor, Stacks was neither the legal nor the presumptive father and was not entitled to notice under section 93-17-5. I agree with the chancellor's finding that Stacks was not entitled to notice, and I would therefore affirm the chancery court's judgment dismissing Stacks's petition to set aside the adoption.

¶40.    The majority also finds that Stacks's Rule 60(b) argument is not procedurally barred. I disagree. I concur with the determination set forth in Judge Greenlee's separate opinion finding that Stacks's Rule 60(b) argument *is* procedurally barred.

19

¶41. When reviewing a trial court's grant of a motion to dismiss, "[t]his Court employs a de novo standard of review." *Hamilton v. Young*, 213 So. 3d 69, 78 (¶22) (Miss. 2017). "Likewise, it uses the same standard when determining questions of law including limitations issues, timeliness, and standing." *Id*.

¶42. This Court has held that "generally[,] the setting aside of an adoption decree is disfavored in Mississippi." *In re Adoption of A.S.E.L.*, 111 So. 3d 1243, 1248 (¶21) (Miss. Ct. App. 2013). "There is a strong public policy declaration in Mississippi's adoption statutes for the finality of adoption decrees." *Id*.

¶43. In this case, the final judgment of adoption was entered on June 13, 2017. Stacks filed his petition to set aside the adoption on December 20, 2017. The chancellor found that Stacks's petition to set aside the adoption was filed outside of the six-month statute of limitations under Mississippi Code Annotated section 93-17-15. Section 93-17-15 states that "[n]o action shall be brought to set aside any final decree of adoption, whether granted upon consent or personal process or on process by publication, except within six (6) months of the entry thereof." The chancellor also found that Stacks "failed to show any substantive evidence of a jurisdictional defect that would negate" the six-month time bar set forth in section 93-17-15. The chancery court therefore granted the Smiths' motion to dismiss Stacks's petition to set aside the adoption. Stacks appealed.

¶44. Section 93-17-8(1)(c) provides that when "an adoption becomes a contested matter," the chancellor must first determine "whether or not the objecting parent is entitled to so object under the criteria of [s]ection 93-17-7." Section 93-17-7 addresses standing to object

20

to an adoption.  Subsection (2)(a)-(b) provides:

> No person, whether claiming to be the parent of the child or not, has standing to object to the adoption if:
>
>> (a)     A final judgment for adoption that comports with all applicable state and federal laws has been entered by a court; and
>>
>> (b)     Notice to the parties of the action, whether known or unknown, has been made in compliance with Section 93-17-5.

Miss. Code Ann. § 93-17-7(2)(a)-(b).  In the present case, the chancellor determined the requirements of section 93-17-7(2)(a)-(b) were met, and therefore Stacks did not have standing to object to the adoption.

¶45.    In reviewing whether Stacks was entitled to notice of the adoption proceeding in this case, I recognize that the provision of section 93-17-5 relevant to the facts of this appeal provides the following language regarding the necessary parties to an adoption proceeding:

> (1) There shall be made parties to the proceeding by process or by the filing therein of a consent to the adoption proposed in the petition, which consent shall be duly sworn to or acknowledged and executed only by the following persons, but not before seventy-two (72) hours after the birth of the child:
>
>> (a)     The parents, or parent, if only one (1) parent, though either be under the age of twenty-one (21) years . . . .

¶46.    The chancellor admitted that Stacks was not served with process in this case. However, the chancellor determined that "[t]he legal and presumptive father of the child was the mother's husband[,] Ricky Raab . . . ."  The chancellor explained that "[Ricky] signed under oath a document entitled 'Voluntary Release of All Parental Rights and Consent to Adoption' on May 19, 2017, that was filed in the adoption proceeding.  In that same document, Ricky alleges that he is 'the legal and biological father of [B.R.].'"  The

21

chancellor therefore found that pursuant to section 93-17-5, "only the legal and presumptive father, Ricky Raab, was entitled to notice of this adoption."

¶47.    The record further reflects that Stacks did not establish his paternity via a DNA test until nearly nine months after the final judgment of adoption was entered. As stated, the final judgment of adoption was entered on June 13, 2017. On March 7, 2018, Stacks petitioned the chancery court to order a DNA test to determine Stacks's paternity of B.R. On March 27, 2018, the DNA results were filed in the chancery court and reflected that Stacks was the biological father of B.R.

¶48.    In its order dismissing Stacks's petition, the chancery court acknowledged that under Mississippi Code Annotated section 93-17-17, "no adoption proceedings shall be permitted to be set aside except for jurisdictional defects and for failure to file and prosecute the same under the provisions of this chapter." The chancellor found that because only Ricky was entitled to notice of the adoption, Stacks "failed to show any substantive evidence of a jurisdictional defect" that would require the chancery court to set aside the adoption proceeding.

¶49.    The chancellor further observed:

> From the time of [B.R.'s] birth until this case began, Mississippi had available to [Stacks] multiple statutory schemes whereby he could have asserted his legal rights with respect to this child. For example, our adoption law under section 93-17-6 provides: "(1) Any person who would be a necessary party to an adoption proceeding under this chapter and any person alleged or claiming to be the father of a child born out of wedlock who is proposed for adoption or who has been determined to be such by any administrative of judicial procedure (the "alleged father") may file a petition for determination of rights as a preliminary pleading to the petition for adoption in any court which would have jurisdiction and venue of an adoption proceeding . . . ; (3) The sole matter

22

for determination under a petition for determination of rights is whether the alleged father is the natural father of the child based on Mississippi law governing paternity or other relevant evidence." There was also available to [Stacks] the right to file a paternity action under Miss[issippi] Code Anno[tated] sections 93-9-1 and following which is the Mississippi Uniform Law on Paternity.

The chancellor stated that "[Stacks] did not avail himself of either procedure."

¶50. Upon review, I find that under section 93-17-5, Stacks was not entitled to receive notice of the adoption proceedings. Stacks therefore lacks standing to object to the adoption proceedings. Accordingly, I would affirm the chancery court's judgment dismissing Stacks's petition to set aside the adoption.

**BARNES, C.J., AND LAWRENCE, J., JOIN THIS OPINION.**