NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In the Matter of the Estate of:
THOMAS W. KUERSCHNER, Deceased.

JAMES T. KUERSCHNER, *Respondent/Appellee*,

*v.*

STEFANIE KUERSCHNER, *Petitioner/Appellant*.

No. 1 CA-CV 25-0108 PB

FILED 09-30-2025

Appeal from the Superior Court in Maricopa County
No. PB2021-003597
The Honorable Lisa Ann VandenBerg, Judge *Retired*

**AFFIRMED**

COUNSEL

Frazer, Ryan, Goldberg & Arnold, LLP, Phoenix
By Scott A. Erickson, Philip B. Whitaker
*Counsel for Respondent/Appellee*

Stefanie A. Kuerschner, Phoenix
*Petitioner/Appellant*

---

## MEMORANDUM DECISION

Judge Daniel J. Kiley delivered the decision of the Court, in which Presiding Judge Angela K. Paton and Judge Brian Y. Furuya joined.

---

**K I L E Y**, Judge:

¶1         Stefanie Kuerschner filed a petition in superior court challenging the disallowance of claims she submitted to the estate (the "Estate") of her late husband Thomas Kuerschner. After a trial, the court ruled against her and awarded attorney fees and costs to the Estate. We affirm.

### FACTS AND PROCEDURAL HISTORY

¶2         On appeal from a bench trial, we view the facts in the light most favorable to sustaining the judgment. *See*, *e.g.*, *Town of Florence v. Florence Copper Inc.*, 251 Ariz. 464, 468, ¶ 20 (App. 2021).

¶3         Thomas and Joan F. Kuerschner had three children, James Kuerschner, Michael Kuerschner, and Christine Kuerschner. Joan died in July 2012. Thomas and Stefanie were married in October 2013.[1]

¶4         At all relevant times, Thomas worked as an oral surgeon. The couple purchased a residence in Scottsdale in October 2016. During the marriage, the couple enjoyed a high standard of living, which Stefanie later attributed to Thomas's "extravagan[ce]."

¶5         Thomas filed a petition for dissolution of marriage in May 2021. At about the same time, Thomas canceled the couple's membership at the Desert Mountain Golf Club. And over the next few weeks, Thomas removed Stefanie as beneficiary of his multi-million-dollar life insurance policies (the "Great-West insurance policies") with Great-West Life & Annuity Insurance Company ("Great-West") and designated his sons James and Michael as beneficiaries instead.

¶6         Approximately one month later, Thomas died by suicide. Thomas's will, which he signed in December 2013 after his marriage to

---

[1] To avoid confusion, we respectfully refer to individuals who share a last name by their first names.

Stefanie, left nothing to her. Instead, the will bequeathed Thomas's assets to his children and a trust that he had previously established. In accordance with the provisions of Thomas's will, James was appointed personal representative of the Estate.

¶7            In February 2022, Stefanie submitted a Notice of Claims Against the Estate. She asserted claims, for example, to the statutory homestead allowance of $18,000, *see* A.R.S. § 14-2402(A), and the family allowance of $12,000, *see* A.R.S. § 14-2404(C), as well as a general claim to her interest in the couple's community property. She also asserted claims to specific assets, including the proceeds of the Great-West insurance policies and amounts due under two promissory notes that Thomas obtained in connection with the sale of his interests in two professional practices.

¶8            As personal representative, James allowed some of Stefanie's claims and disallowed others. The claims he allowed included Stefanie's claim for the statutory homestead and family allowances in the aggregate amount of $30,000. James declined to disburse this sum to Stefanie, however, on the basis that the homestead and family allowances were statutorily chargeable against any benefit or share passing to Stefanie by non-probate transfer. *See* A.R.S. §§ 14-2402(C), -2404(C). Because the value of Stefanie's one-half share of the Scottsdale residence exceeded $30,000, James asserted, Stefanie was not entitled to a $30,000 disbursement from the Estate.

¶9            James acknowledged that, under appropriate circumstances, Stefanie may be "entitled to recover from any community property still held by the Estate" after payment of debts and expenses. As James later cautioned, however, the amount of the allowed claims of the Estate's creditors far exceeded the Estate's assets. "It is entirely possible," James warned, "that the Estate assets will be exhausted by litigation costs and other expenses of administration," leaving "nothing" for either Stefanie or the "other creditors of the [E]state[.]"

¶10           The claims that James disallowed included, among others, Stefanie's claim to the proceeds of the Great-West insurance policies. The Estate denied Stefanie's allegation that Thomas lacked testamentary capacity to change the beneficiary and alleged that, in any event, Stefanie could assert no valid claim against the Estate relating to the insurance policies since the Estate was not a beneficiary and had no interest in the proceeds. Additionally, James disallowed Stefanie's claims to amounts payable under the promissory notes, asserting that the notes represent the proceeds of the sale of assets Thomas acquired before the marriage, and

3

therefore that amounts payable under those notes were Thomas's separate property.

¶11 Stefanie also alleged that Thomas breached his fiduciary duty to the marital community by canceling the couple's country club membership without her consent. Although she did not expressly quantify the damages she claimed, she noted that the "[p]urchase of a new membership" at Desert Mountain would "cost in excess of $100,000." James disallowed Stefanie's breach of fiduciary duty claim, taking the position that Thomas acted in the marital community's interests because the couple "were deeply in debt" and could no longer afford the country club membership.

¶12 Stefanie filed a Petition for Allowance of Claims Against Estate ("Petition for Allowance") in June 2022. The matter was ultimately set for trial in mid-July 2024.

¶13 In the ensuing probate proceedings, Stefanie filed numerous duplicative motions and claims for relief. After filing a motion in mid-August 2023, for example, seeking an order compelling James to disburse $30,000 to her to satisfy her homestead/family allowance claims, Stefanie filed another motion seeking the same relief two days later, and still another one the following day. In November 2023, Stefanie filed two more motions seeking the same relief. The court denied all her requests as legally unsupported.

¶14 Through counsel, Stefanie contacted Great-West to dispute Thomas's change to the Great-West insurance policies' beneficiary designation. In December 2021, Great-West filed an interpleader action in federal district court to "determine the proper beneficiary." Although the disposition of Thomas's life insurance proceeds was thus the subject of separate litigation, Stefanie continued to re-assert arguments in the probate proceedings relating to her claim to those proceeds. In an October 2023 filing, for example, Stefanie asked the superior court to "assist" the federal court by "ordering dates and a timeline in the interplead matter" and, "[i]f appropriate," to "order [James] to account for any misappropriated funds pertaining to the Great West ADA life insurance interplead matter[.]"

¶15 Stefanie made multiple requests to remove James as personal representative of the Estate. In mid-August 2023, she filed a motion to remove James as personal representative due to various acts in purported "breach" of his "Fuduciary [sic] duty," including his "fail[ure] to release"

the $30,000 for her "spouse/homestead support" claim. Two days later, Stefanie filed a petition seeking the same relief.

¶16 While represented by counsel, Stefanie filed five motions *in propria persona* over a two-month period, all seeking to compel James to disclose certain documents and other financial information. After she filed the motions, her counsel moved to withdraw, which the court granted. In the end, Stefanie's motions to compel were all denied based on her failure to comply with the "good faith consultation" requirements of applicable court rules. *See* Ariz. R. Civ. P. 7.1(b), 37(a)(1); Ariz. R. Prob. P. 4(a)(1).

¶17 Additionally, Stefanie served overly broad and burdensome discovery requests on James, the Estate, and third parties, including non-uniform interrogatories inquiring about unrelated matters.[2]

¶18 The court set a February 2023 deadline for the disclosure of expert opinions, and then extended that deadline at the parties' request until July 2023. In September 2023, after the July 2023 deadline had already passed, Stefanie moved for an extension "until 11-31-2023 [*sic*]." She explained that her "forensic accountant[,]" Josephine Giordano, had prepared a "draft" report to "prove[] marital fraud[,]" but that more time was needed to finalize the report. The Estate did not object to Stefanie's request to extend the expert disclosure deadline. The court extended the deadline until the end of November but made clear in its ruling that it would grant no further continuances.

¶19 Stefanie did not disclose a final expert report by the November 2023 deadline. Not until June 2024 did she disclose what she referred to as Giordano's "final report," but which was entitled "Preliminary Expert Report." The Estate moved to preclude the report from trial because "it was not timely disclosed" and because, on its face, it was "merely a *preliminary* report[,]" not a final report. The court granted the motion to preclude the expert report, although it permitted Stefanie to call Giordano as a witness at trial.

¶20 The court held a three-day bench trial in July 2024, at which Stefanie represented herself. Stefanie testified on her own behalf and called Giordano and five fact witnesses to testify. After Stefanie rested, the court granted judgment in favor of the Estate on several of her claims due to a

---

[2] By way of example, one of the non-uniform interrogatories that Stefanie served on James purported to require him to disclose "any" interest he held in "any" trust, regardless of when the trust was created, or who created it.

lack of evidentiary support. Because Stefanie failed to present any evidence to support her claims to the proceeds of the Great-West insurance policies and her breach of fiduciary duty claim relating to the couple's golf club membership, for example, the court granted the Estate judgment as a matter of law on those claims. The Estate then presented evidence, and the court took the remaining claims under advisement.

¶21 A few days after trial, Stefanie filed another petition to remove James as personal representative on grounds of "SELF DEALING." Although the court had already rejected Stefanie's claim to the proceeds of the Great-West insurance policies, Stefanie again accused James of "tak[ing]" the proceeds improperly because the policies were "purchased during [the] marriage . . . with marital income." In the same filing, Stefanie asserted a new claim, alleging that James improperly "failed to pay service fees" for the couple's "Disney timeshare[,]" causing the timeshare to go into foreclosure.

¶22 Within two weeks, Stefanie filed a "Motion for Expedited Hearing" in which she again requested James's removal as personal representative of the Estate on various grounds, including a new claim that James failed to account for a "2021 Tesla" that Thomas purchased "shortly before death." The court denied Stefanie's motion.

¶23 Shortly thereafter, the court issued its findings of fact and conclusions of law ("FOF/COL") in which it determined, *inter alia*, that two promissory notes that Thomas obtained in connection with the sale of his interests in two professional practices constituted Thomas's separate property in which Stefanie had no interest. The court further found that, although Stefanie was entitled to homestead and family allowances totaling $30,000, that sum was offset by Stefanie's one-half interest in the Scottsdale residence, and therefore that "no amount is payable by the Estate to [Stefanie] in satisfaction of her homestead allowance and family allowance claims."

¶24 Stefanie then proceeded to file a slew of motions challenging the court's FOF/COL. In some instances, she raised new claims that she did not assert at trial. In one filing, for example, Stefanie complained that James had not accounted for a $6,000 set of golf clubs that Thomas purchased "just before [his] death." In other instances, Stefanie simply re-urged claims that the court had already rejected at trial for lack of evidentiary support. Stefanie re-asserted her argument, for example, that Thomas "moved our life [insurance] policies . . . purchased with marital income . . . into the name(s) of his son's [*sic*] . . . without my consent."

¶25 Stefanie also filed requests for relief that the court lacked authority to grant. She filed a motion, for example, asking the court to vacate a default judgment that had been entered against her in favor of a creditor in separate litigation. *See Banleaco, Inc. v. Stefanie Kuerschner et al.*, Maricopa County Superior Court Case No. CV2023-020388. And Stefanie issued a series of new subpoenas to banks, law firms, and others seeking documents that she had not obtained before trial. The Estate successfully moved to quash the post-trial subpoenas.

¶26 James filed an application for attorney fees and costs, asserting that Stefanie "acted unreasonably," "asserted claims without substantial justification," "expanded and delayed the proceedings," and "engaged in abuse of discovery." In response, Stefanie asserted that no fee award was warranted due to James's purportedly improper litigation conduct and her own "state of poverty." Finding that Stefanie "acted unreasonably," including by "present[ing] no evidence whatsoever" to support some of her claims, by filing "repetitive" motions, and by serving "numerous improper . . . discovery requests[,]" the court awarded costs and fees of $291,377.28, an amount less than requested, and entered final judgment.

¶27 Stefanie timely appealed.[3] We have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

¶28 Stefanie challenges the superior court's rejection of her claims and its award of fees and costs to the Estate. In response, James argues, first, that Stefanie waived appellate review because her opening brief "does not cite to the record," contains "incorrect [case] citations," and misrepresents the holdings of cited cases.

---

[3] After filing her notice of appeal, Stefanie continued to file motions for relief in the superior court, including a motion asserting that she had no notice of James's fee application because he did not serve a copy on her at her current address. Because Stefanie filed a response to James's fee application, her subsequent contention that she was unaware that it had been filed was obviously false. Eventually, on motion of the Estate, the court designated Stefanie a vexatious litigant. The court also granted James's request for fees, in an amount of roughly $15,000, as a sanction for continuing to "bring[] frivolous motions." Stefanie did not appeal from those fee awards, and thus we do not address them.

¶29　　　　James makes valid points. Stefanie's opening brief is, indeed, devoid of the record citations required by ARCAP 13(a)(7)(A), and her case citations are often inaccurate. For example, Stefanie's opening brief contains the following sentence:

> Furthermore in the Arizona case of *In re Adoption of J.E.B., 164 Ariz. 265, 792 P.2d 724 (Ct. App. 1990),* the court held that in termination of parental rights proceedings, denying a parent's request for a short continuance to obtain counsel may be reversible error, as it implicates due process and the right to a fair hearing.

¶30　　　　Nothing about this citation is accurate. The Arizona Reports citation and the Pacific Reporter citation refer to two different cases, neither of which is captioned "In re Adoption of J.E.B."[4] A case bearing that caption was decided by the Mississippi Supreme Court in 2002, but that case did not involve a challenge to the denial of a continuance request. *See In re Adoption of J.E.B.*, 822 So.2d 949, 953, ¶ 15 (Miss. 2002) (rejecting, as time-barred, father's challenge to agreement by which he allowed maternal grandparents to adopt his child). As far as this Court can determine, this case that Stefanie cites in her briefing does not exist.

¶31　　　　Nonetheless, because "resolution of cases on their merits is preferred," *DeLong v. Merrill*, 233 Ariz. 163, 166, ¶ 9 (App. 2013), we decline to hold that the deficiencies in Stefanie's opening brief effect a waiver of her right to appellate review of her claims. Instead, in the exercise of our discretion, we will address the substance of the arguments she raises to the extent they are developed sufficiently for us to do so. Any arguments, however, that Stefanie does not sufficiently develop will be deemed waived. *See MacMillan v. Schwartz*, 226 Ariz. 584, 591, ¶ 33 (App. 2011) ("Merely mentioning an argument in an appellate opening brief is insufficient." (citation omitted)).

---

[4] The case found at page 265 of Volume 164 of the Arizona Reports is an Arizona Supreme Court decision addressing the standard for granting relief under Arizona Rule of Civil Procedure 60 following the dismissal of a case for lack of prosecution. *See Jepson v. New*, 164 Ariz. 265, 268 (1990). The case found at page 724 of Volume 792 of the Pacific Reporter Second is an Arizona Supreme Court decision addressing a challenge to the validity of a trustee's sale. *See Eardley v. Greenberg*, 164 Ariz. 261, 262, 792 P.2d 724, 725 (1990).

### A. The Court Did Not Violate Due Process by Denying Stefanie's Motion to Continue Trial.

¶32      Stefanie's first attorney filed a notice of appearance in August 2021, and withdrew three months later. Stefanie retained replacement counsel, who filed the Petition for Allowance of Claims Against Estate on her behalf in June 2022. Two months later, after Stefanie filed five motions *in propria persona*, her replacement counsel also withdrew. Stefanie was self-represented for about two months, when a third attorney filed a notice of appearance on her behalf.

¶33      Roughly two months before the July 2024 trial date, Stefanie's third attorney moved to withdraw, which the court granted. At a status conference on June 4, Stefanie asked that the trial be continued for 90 days to allow her time to obtain new counsel. Counsel for one of the Estate's creditors objected to the continuance, observing, "My client is one of those creditors who is awaiting payment and watching that ability to make payment diminish as the case drags on." James, too, opposed a trial continuance, noting that Stefanie had already changed lawyers multiple times and warning that the case would "never . . . reach the finish line" if "the revolving door continues[.]" In reply, Stefanie insisted that she did not change counsel voluntarily, explaining, "[W]hat's happened is that I've run out of money to pay attorneys[.]" The court denied Stefanie's request to continue the trial, finding that she failed to establish good cause.

¶34      Stefanie now argues that the court's denial of a trial continuance "constituted a breach of the appellant's right to [a] fair hearing and trial at the Court[.]" According to Stefanie, the denial of a continuance "impacted on the entire trial . . . and invariably the judgment [*sic*]."

¶35      "A trial court has broad discretion over the management of its docket[,]" including over decisions whether to extend deadlines or grant continuances. *Findlay v. Lewis*, 172 Ariz. 343, 346 (1992). A trial court's discretion to control the management of its docket, however, is subject to the litigants' due process rights to an "adequate opportunity to be heard." *Backstrand v. Backstrand*, 250 Ariz. 339, 346–47, ¶ 29 (App. 2020). We review the denial of a motion to continue for abuse of discretion. *In re Z.L.*, 256 Ariz. 138, 142, ¶ 15 (App. 2023) (citation omitted).

¶36      Stefanie does not identify any additional evidence that she would have obtained and presented if the trial had been continued. Further, she has not shown that the denial of her continuance request left her unprepared to advocate on her own behalf. *See Sandretto v. Payson*

*Healthcare Mgmt., Inc.*, 234 Ariz. 351, 361–62, ¶ 41 (App. 2014) (rejecting challenge to denial of motion to continue because appellant failed to show that a continuance would have enabled it to present additional evidence or argument). On the contrary, Stefanie demonstrated her willingness and ability to advocate for herself by filing motions *in propria persona* even while represented by counsel. In any event, a court does not abuse its discretion in denying a continuance request predicated on a party's expressed intent to retain a new counsel when, as here, the party requesting the continuance admits she lacks the means to do so. *See In re Maricopa County Superior Court No. MH2003-000240*, 206 Ariz. 367, 369–70, ¶ 10 (App. 2003) (holding that trial court did not abuse its discretion in denying appellant's request for continuance to retain private counsel, in part because she "had no funds with which to hire private counsel, undercutting the proffered reason for the continuance").

¶37　　　　　Finally, Stefanie does not dispute that the delay caused by a continuance may have unfairly prejudiced third parties who were creditors of the Estate. On this record, the court did not abuse its discretion by denying Stefanie's request to continue the July 2024 trial.

### B. The Court Did Not Violate Due Process by Failing to Consider Exhibit 64 in its Ruling.

¶38　　　　　Stefanie argues, next, that the court erred in failing to consider Trial Exhibit 64 in its ruling. Exhibit 64, Stefanie explains, consists of "hundreds of pages of proof of marital waste and marital fraud . . . that formed a core part of the appellant's case." Although, Stefanie maintains, the "record of proceedings" shows that the court "clearly admitted [E]xhibit 64" at trial, the court proceeded to "[i]gnor[e]" this "vital evidence[.]" Noting that due process "requires" a court to "fairly consider the evidence presented[,]" Stefanie argues that the court here "undermined the integrity of the judicial process" by "[n]eglecting" Exhibit 64.

¶39　　　　　An appellate court "will not disturb [a] trial court's ruling on any evidentiary issue absent a clear abuse of discretion." *State v. Atwood*, 171 Ariz. 576, 634 (1992) (citation omitted).

¶40　　　　　The record refutes Stefanie's contention that Exhibit 64 was admitted at trial. When Stefanie offered Exhibit 64 at trial, James objected to its admission on the basis that Stefanie had offered no foundational testimony. When the court invited her to offer testimony to support it, Stefanie declined, citing her desire to conserve the remaining trial time allotted to her for cross-examination of the Estate's witnesses. The court

cannot be said to have violated Stefanie's right to due process by failing to consider an exhibit that was not admitted at trial. *Cf. In re Marriage of Meyer*, 2 CA-CV 2015-0176, 2016 WL 2731135 at *2, ¶ 7 (Ariz. App. May 10, 2016) (mem. decision) (rejecting challenge to court's failure to adopt values for community real property proposed by parties, in part because the court "had to make its determinations based on the evidence presented at trial" (citations omitted)).

**¶41**         In her reply brief, Stefanie concedes, for the first time, that Exhibit 64 was not admitted, but argues that the court "improperly excluded" it. She goes on to discuss, at some length, the purported relevance of, and foundational support for, Exhibit 64.  Because she raises these arguments for the first time in her reply brief, we decline to consider them. *See Dawson v. Withycombe*, 216 Ariz. 84, 111, ¶ 91 (App. 2007) ("We will not consider arguments made for the first time in a reply brief." (citation omitted)); *Robert Schalkenbach Found. v. Lincoln Found., Inc.*, 208 Ariz. 176, 180, ¶ 17 (App. 2004) (noting that courts generally treat issues "not raised in an appellant's opening brief as abandoned or conceded." (citations omitted)).[5]

### C. Stefanie Is Not Entitled to Relief on Her Challenge to the Court's FOF/COL.

**¶42**         Stefanie next argues that the court's "findings of fact and conclusions of law" were "clearly erroneous." In support of her position, Stefanie does not dispute any of the findings or conclusions set forth in the FOF/COL. Instead, she argues, in a conclusory manner, that the court's findings that she "acted unreasonably, bought [*sic*] and prosecuted claims without substantial justification, engaged in abuse of discovery and unreasonably expanded the proceedings" was "erroneous and not borne out of evidence presented before the court." Stefanie thus challenges only the court's findings in support of its award of fees, not the court's ruling on the merits of her claims.

**¶43**         Because Stefanie presented no specific challenge to the court's FOF/COL in her opening brief, we deem her argument abandoned. *Robert Schalkenbach Found.*, 208 Ariz. at 180, ¶ 17.

---

[5] After Stefanie filed her reply brief, James filed a motion to strike the portions that raised new arguments. Since we do not consider arguments raised for the first time in a reply brief, the motion to strike was not necessary, and is hereby denied.

¶44　　　　In her reply brief, Stefanie raises specific challenges to the factual findings in the FOF/COL. She argues, for example, that the court's ruling "failed to recognize [her] equitable and legal claims" when rejecting her claim to the proceeds of the Great-West insurance policies. But because she did not raise these arguments in her opening brief, we will not consider them. *Dawson,* 216 Ariz. at 111, ¶ 91.

### D. The Court Did Not Abuse Its Discretion in Awarding Attorney Fees, Costs, and Post-Judgment Interest.

¶45　　　　Stefanie argues that the court erred in awarding attorney fees and costs against her. According to Stefanie, the court's findings that she brought unsupported claims and litigated unreasonably are "not borne out of evidence presented before the court." At a minimum, she maintains, her claims were "supported by a reasonable factual basis and legal theory, even if the probate court ultimately rejected" them, and so they do "not warrant [an] award of legal fees [or] costs[.]"

¶46　　　　We do not re-weigh evidence and instead will uphold the court's factual findings unless they are clearly erroneous. *Matter of Ghostley*, 248 Ariz. 112, 117, ¶ 21 (App. 2020) (citation omitted). Findings are not clearly erroneous if "substantial evidence exists to support the trial court's action." *Id.* (quotation omitted).

¶47　　　　In her response to James's fee application, Stefanie argued that James's fee request should be denied because of James's purported misconduct and her own indigency. She did not, in other words, attempt to defend the legal and factual bases of her claims or the manner in which she litigated them. Accordingly, she has waived that argument on appeal. *Kirsten v. Arizona Dep't of Transportation, Motor Vehicle Div.*, 258 Ariz. 398, 402, ¶ 14 (App. 2024) (holding that argument not raised in trial court was waived on appeal).

¶48　　　　Waiver notwithstanding, the record here amply supports the court's findings that Stefanie pursued factually unsupported claims and unreasonably expanded the proceedings. As recounted in detail above, she filed duplicative and groundless motions throughout the proceedings in pursuit of claims that she made no effort to support at trial, such as her claim of breach of fiduciary duty relating to Thomas's cancellation of the couple's country club membership. She filed repetitive requests, including for the release of funds relating to the family and homestead allowances and to remove James as the personal representative to the Estate, which significantly and unjustifiably expanded the litigation. Stefanie's post-trial

motions challenging the denial of her claim to the proceeds of the Great-West insurance policies were baseless since she presented no evidence at trial to support it. And she prolonged the proceedings by serving post-trial subpoenas and asserting new claims after trial. Because substantial evidence supports the court's findings in support of its award of fees and costs, Stefanie is entitled to no relief.

**¶49** Finally, Stefanie asserts that the court erred in awarding "post judgment interest[,]" asserting that "interest applies only to judgments that are validly entered against the estate, not against unsuccessful claimants." Because post-judgment interest is required by statute, *see* A.R.S. § 44-1201(B), the court did not err in awarding post-judgment interest here. And Stefanie's reliance on *Estate of Travers*, 192 Ariz. 333 (App. 1998), in support of her position is unavailing since that case did not address the issue of post-judgment interest. *See Travers*, 192 Ariz. at 335–36 (holding that decedent's ex-spouse was entitled to notice of probate proceedings under A.R.S. § 14-3801(B), but that his claim was untimely under Ariz. R. Civ. P. 60(c)(6)).

## CONCLUSION

**¶50** For the foregoing reasons, we affirm.

**¶51** The Estate requests an award of fees and costs on appeal under A.R.S. § 14-1105. Because Stefanie's continued pursuit of meritless claims has unreasonably caused the Estate to incur fees on appeal, we grant the Estate's request, subject to its compliance with ARCAP 21.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**: JR